GAYNELLE WILSON, INDIVIDUALLY, AND AS GUARDIAN AD LITEM FOR FREDERICK WILSON, A MINOR, PLAINTIFF–RE-SPONDENT, v. UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, DEFENDANT–APPELLANT.

Argued September 14, 1987—Decided January 26, 1988.

*William R. Hopkin, Jr.* argued the cause for appellant (*Tomlin, Clark and Hopkin,* attorneys; *John P. Montemurro,* of counsel).

*Michael J. Waldman,* argued the cause for respondent (*Ferrara & Waldman,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

This case, like *Sotomayor v. Vasquez,* 109 *N.J.* 258 (1988), also decided today, primarily concerns the availability of PIP coverage for the passenger in an uninsured vehicle. In this case a passenger riding in a private automobile was injured in a collision between that car and a school bus owned and operated

by the Township of Moorestown. As we stated in *Sotomayor*, under the provisions of *N.J.S.A.* 39:6A–4 each private automobile is expected to provide coverage for its own passengers with respect to PIP expenses. Once again, however, we have an uninsured vehicle. The bus, not being required to maintain PIP insurance, has none, and in any event, a vehicle's PIP coverage does not extend to injured passengers in another vehicle. *See Sotomayor v. Vasquez, supra,* 109 *N.J.* at 265–66.

Hence, the passenger in the uninsured car seeks to recover from the Unsatisfied Claim and Judgment Fund (hereafter UCJF or the Fund) under *N.J.S.A.* 39:6–86.1. The Fund denies recovery on the theory that there is another source for payments in this case, i.e., the third-party liability of the owner and operator of the bus, the Township of Moorestown. We shall discuss in Part III, *infra* at 279–281, whether "PIP-type" damages are recoverable from such a tortfeasor. In fact, the plaintiff here has already settled his liability insurance claims against the uninsured driver of the car and against the Township.

I

The procedural posture of this case is that the five-year-old plaintiff was a passenger in his uncle's uninsured car when it was involved in an automobile accident on September 28, 1983, with a Township of Moorestown Board of Education school bus.[1] Plaintiff filed parallel claims against the Township and against the Unsatisfied Claim and Judgment Fund Board. Plaintiff settled his suit against the Township for $20,000. The record is silent, however, on whether that settlement was expressly made exclusive of damages for "PIP-type" benefits.

---

[1] Important amendments to the "No–Fault" Law were made by *L.*1983, *c.* 362, effective October 4, 1983. We do not base our decision on the retroactivity of those amendments. *See Colonial Penn Ins. Co. v. Allstate Ins. Co.,* 214 *N.J.Super.* 453 (App.Div.1986) (1983 amendments prospective); *but see Cokenakes v. Ohio Casualty Ins. Co.,* 208 *N.J.Super.* 308 (Law Div.1985) (holding to the contrary). We believe, however, that the 1983 amendments are instructive as to legislative intent.

In the companion UCJF action, both parties moved for summary judgment. The issue presented to the trial court was "whether a passenger in an uninsured automobile, struck by an insured vehicle, may recover medical expenses from the [UCJF] without first obtaining and exhausting efforts to collect the expenses from the insured driver or owner." *Wilson v. Unsatisfied Claim & Judgment Fund Bd.*, 213 *N.J.Super.* 594, 595 (1985), *aff'd*, 213 *N.J.Super.* 520 (1986), *certif. granted*, 107 *N.J.* 76 (1987).

Initially, the trial court analyzed the comparable provisions of the New Jersey Automobile Reparation Reform Act ("No–Fault" Law), *N.J.S.A.* 39:6A–4, and the Unsatisfied Claim and Judgment Fund Law (Fund Law), *N.J.S.A.* 39:6–86.1. We summarize its holding: it placed special emphasis on the report of the Automobile Insurance Study Commission entitled *Reparation Reform for New Jersey Motorists* (1971) [hereinafter *Reparation Reform*], which was the basis of our 1972 "No–Fault" Law. The Commission specifically recommended the creation of PIP coverage, compulsory insurance, the limited tort exemptions, and various other changes in insurance laws, including the "no-fault" concept. *Wilson, supra,* 213 *N.J.Super.* at 598. At the same time, the Commission also recommended a change in the Fund Law to provide PIP benefits for occupants of uninsured vehicles. This provision was ultimately adopted in 1972.

The trial court also referred to certain "paramount policy goals" of the Commission: namely, (1) that all automobile accident victims should receive reimbursement for the "PIP-type" expenses without regard to collateral sources—that is, PIP benefits shall be primary; (2) that subrogation should be limited to inter-company agreements and that the injured person should not be permitted to offer evidence that "PIP-type" damages were paid or payable. *Wilson, supra,* 213 *N.J.Super.* at 598–99. The court also noted that the purpose of the latter proviso was to reduce costs by eliminating dual recoveries, i.e., recoveries under both first- and third-party settlements. More-

over, it was the Commission's hope that personal injury protection coverage would "absorb many claims which would otherwise flow into the higher-cost tort benefit system," and thus would carry "all injury victims, without regard to fault, a fair and reasonable distance toward their reparation objectives." *Wilson, supra,* 213 *N.J.Super.* at 599 (quoting *Reparation Reform* at 90, 99 (1971)).

Reasoning that the Commission had "stressed again and again" the requirement that PIP benefits be paid promptly without regard to fault, the trial court then analyzed *N.J.S.A.* 39:86.1 and concluded that the language of the UCJF and "No–Fault" Laws, as well as their "obvious mutuality, point to a clear legislative intent that the Fund is not to withhold PIP payments until insured drivers, potentially liable for injuries resulting from an accident, have been so found." *Wilson, supra,* 213 *N.J.Super.* at 599, 602.

The Appellate Division affirmed the judgment of the trial court. *Wilson v. Unsatisfied Claim & Judgment Fund Bd.,* 213 *N.J.Super.* 520 (1986). It specifically disapproved of the reported decision in *Pearman v. Unsatisfied Claim & Judgment Fund Bd.,* 185 *N.J.Super.* 397, 401 (Law Div.1982), which held that to recover PIP benefits from the Fund a claimant must comply with *all* of the elements of the Fund statute, including those requiring that the individual have no cause of action against an insured defendant. In the Appellate Division's view, eligibility for PIP benefits under the Fund did not include the requirement that a qualified person comply with the entire Fund Law; rather, a claimant need meet only the specific qualifications noted in the PIP provisions of the Fund Law. The court reasoned that the contrary view requiring exhaustion of all third-party claims would destroy PIP's primary goal of providing prompt payment of necessary medical expenses incurred in auto accidents. *Wilson, supra,* 213 *N.J.Super.* at 523. We granted the Fund's petition for certification, 107 *N.J.* 76 (1987), and now affirm that judgment.

## II

The Fund contends that it was never intended to be a source of PIP benefits when a financially responsible third party is involved in an accident; rather, the Fund was created as a trust fund to be available as a payment resource only when all others have been exhausted. The Fund maintains that this has been its consistent administrative policy since the Fund's PIP provisions were established as part of the "No–Fault" Law in 1972. It points to a series of unreported Appellate Division decisions supporting this interpretation and argues that this decision departs from prior interpretations of Fund liability.

■ By equating the eligibility requirements for PIP benefits with those for liability claim benefits, the Fund reaches the conclusion that PIP benefits under the Fund cannot be paid if there is any other available source of payments. At this point it should be reiterated that PIP benefits are equivalent to the common-law special damages recoverable in a personal injury tort action. PIP benefits, however, may be recovered without regard to fault, and are unlimited in amount and duration.

The Fund bases its argument on the following syllogism:

1. The opening sentence of its enabling act, *N.J.S.A.* 39:6–86.1, states that the Fund will provide PIP benefits only when a "person qualified to receive payments under the provisions of the [1972] Unsatisfied Claim and Judgment Fund Law" sustains damages as a result of an accident as the occupant or user of an automobile that does not have PIP coverage in effect.

2. To be "qualified to receive payments" under the provisions of *N.J.S.A.* 39:6–86.1, one must meet all the requirements of the Fund Law, including *N.J.S.A.* 39:6–70 and *N.J.S.A.* 39:6–71, which require, among other things, that the claimant has an unsatisfied judgment against a responsible party, and has not made a settlement of any such cause of action without giving credit therefor and that all steps have been taken to collect the amounts claimed.

3. Since by definition the claimant in this case cannot state that there is any unsatisfied judgment and since, in fact, there was a settlement, he cannot meet the eligibility requirements of the Fund and thus must be denied benefits.

Conversely, the plaintiff contends that although the Fund's argument is facially plausible, its logic conflicts with the internal structure of *N.J.S.A.* 39:6-86.1 and the public policy that underlies PIP. Plaintiff notes that the Fund's enabling act sets forth specific qualifications that only partially embrace the general qualifications for recovery of unsatisfied judgments under the Fund. The 1972 enabling act, *N.J.S.A.* 39:6-86.1, required specifically (but without attempting to paraphrase it with exactitude) that for benefits to be paid under the PIP section the applicant had to demonstrate that: (1) the accident was not covered by workers' compensation; (2) the claimant was not a member of the household of the uninsured motorist involved in the accident [repealed in part by *L.*1983, *c.* 362, § 2 (limiting disqualification to owner or registrant of an uninsured motor vehicle)]; and (3) the claimant was not operating or occupying a stolen vehicle or an automobile without the authority of the owner, nor was the claimant operating a vehicle while his license was revoked.[2]

---

[2]In the 1983 amendments to *N.J.S.A.* 39:6-86.1, the Legislature has slightly reworded these disqualifications to incorporate again only certain of the general qualifications of the Fund Law. The provision now stipulates that a claimant for PIP benefits is disqualified only by reason of the provisions of sub-sections (a), (c), (d), or (*l*) of *N.J.S.A.* 39:6-70. Those disqualifications correspond to the specific disqualifications of the 1972 version of the Fund's PIP counterpart, *i.e.,* that it is not a compensation case; there is no stolen vehicle involved; there is no subrogation involved; there is no revocation involved; and there is no ownership by the claimants of an uninsured vehicle. Although this accident occurred prior to 1983, these amendments serve to illustrate the intent of the Legislature in 1972.

As the Appellate Division observed, it was an editor's footnote in the annotation to the codified statute that convinced the court in *Pearman v. Unsatisfied Claim & Judgment Fund Bd.,* 185 *N.J.Super.* 397, 401 (Law Div.1982), that a "person qualified" to recover PIP benefits from the Fund means one who had exhausted all the prerequisites to a liability recovery from the Fund. The

■ In general, when there is a conflict between general and specific provisions of a statute, the specific provisions will control. *Maressa v. New Jersey Monthly*, 89 *N.J.* 176, 195, cert. *denied*, 459 *U.S.* 907, 103 *S.Ct.* 211, 74 *L.Ed.*2d 169 (1982). But, more importantly, we find inappropriate in the PIP setting the wholesale incorporation of the exhaustion of recovery requirements for general recovery under the UCJF Law. The underlying object of PIP is to provide pay-as-you-go benefits, that is, prompt and current payments of medical expenses as they accrue, thereby serving the dual goals of (1) minimizing possible inflation of expenses (since, if one has to sue first to establish recovery, there is a necessary uncertainty in predicting expenses); and (2) minimizing or possibly avoiding litigation.

We recognize that this is a close question of interpreting legislative intent. We must choose, without clear direction, between two results that are each arguably possible under the relevant statutes. It is possible to conclude that since plaintiff had *a* remedy, i.e., the possibility of a third-party liability action against the Township of Moorestown, he should not recover anything from the Fund. On the other hand, it happens to be merely fortuitous in this case that the Township is not only a

---

editor's footnote to the words "person qualified" to receive payments under the Fund referred to the entire UCJF Law, *N.J.S.A.* 39:6–61 to –91, including the non-availability of a third-party claim, *N.J.S.A.* 39:6–70(m), and the recovery of an unsatisfied judgment, *N.J.S.A.* 39:6–70(g) to (k). The official session law, however, made no such reference. As we have noted, the only disqualifications were stated in the law itself. (*Supra* at 276–277). The Appellate Division further noted that the codification of the 1983 amendment to *N.J.S.A.* 39:6–86.1 specifically referred only to *N.J.S.A.* 39:6–61, the Act itself.

*N.J.S.A.* 39:6–62 defines "qualified person" to include one such as Gaynelle Wilson, a "resident of this State," not otherwise disqualified. By noting the grammatical untidiness of referring to a "qualified person to receive benefits," the *Wilson* trial court had dispatched the other *Pearman* argument, that the transposition of the words "qualified person" in the general provisions of the Fund Law, *N.J.S.A.* 39:6–62, and "person qualified" in the provisions of the PIP portion of the Fund Law, *N.J.S.A.* 39:6–86.1, evidenced a legislative distinction. *Wilson, supra,* 213 *N.J.Super.* at 604.

responsible party in the sense of having financial responsibility but is also responsible in negligence for the accident. (In an arbitration proceeding pursuant to the New Jersey Automobile Arbitration Program, it was determined that the Township was 100% liable for the accident.)

However, in a prototypical case in which the relative fault of the parties is uncertain (e.g., a right angle intersection case), the tactical goal of PIP is to provide plaintiffs with ready access to medical benefits to the end that satisfaction of such claims might, in some cases, eliminate litigation over the remaining aspects of the bodily injury claim. It strikes us that this goal will best be served by allowing the passenger in an uninsured vehicle to recover PIP benefits from the Fund despite the availability of a third-party claim. We recognize that this interpretation may tend to deplete the Fund and thus increase the overall cost to all drivers. Nonetheless, we believe that the strategic policy goals of the Automobile Reparations Reform Act, *N.J.S.A.* 39:6A–1 to –35, preponderate in that direction. Obviously, the Legislature may reorder the priorities as will best serve the public interest. *See N.J.S.A.* 39:6A–4.2 (establishing primacy of coverage for PIP benefits); *N.J.S.A.* 17:28–1.1 (eliminating "stacking" of uninsured and underinsured motorist coverage).

Hence, we conclude that, as an abstract question, the presence of a responsible third party tortfeasor does not of itself make the claimant in an uninsured motor vehicle ineligible to receive PIP benefits from the Fund.

### III

We recognize that this resolution presents its own problems but we do not seek to address all of them in this opinion. For example, we do not foreclose by our disposition the possibility that the Fund should appropriately be subrogated to or reimbursed for the injured party's right to recover "PIP-type" damages from an insured third party. The provision of *N.J.S.*

*A.* 39:6A–12 that bars recovery in a tort action of the "amounts collectible or paid [as PIP benefits]" is not repeated in the Fund Law. In *Aetna Ins. Co. v. Gilchrist Bros., Inc.,* 85 *N.J.* 550 (1981), the Court held that a private PIP carrier could not recover by subrogation from an insured tortfeasor the PIP benefits that the carrier had paid to its insured. The 1983 amendments to the "No–Fault" Law now seem partially to overrule *Aetna v. Gilchrist, supra,* in that *N.J.S.A.* 39:6A–9.1 "confers a primary right of reimbursement on the injured party's insurer" against a tortfeasor, like Gilchrist, who was not required to maintain PIP coverage or against a tortfeasor who failed to carry PIP protection. *Buoni v. Browning Ferres Indus.,* 219 *N.J.Super.* 96, 99–100 (Law Div.1987). In the case of in-state accidents the insurer's right of reimbursement is governed by agreement of the involved insurers or by arbitration. *N.J.S.A.* 39:6A–9.1. The Fund has no comparable statutory grant or restraint of reimbursement or subrogation against third-party tortfeasors although it has a powerful summary no-fault remedy against the uninsured owner whose failure to abide by the compulsory auto insurance scheme resulted in the claimant's application to the Fund. *See N.J.S.A.* 39:6–85.

Rather than attempt to resolve all of the latent difficulties in our disposition of the basic issue presented, we shall await the presentation of specific problems. We believe that counsel for the Fund and for the parties should be able to resolve most difficulties. The Fund may wish to develop policies similar to those employed in connection with public assistance grants. A county welfare board that advances financial assistance to a needy person who possesses a tort claim for medical expenses and injuries can obtain reimbursement from a subsequent damage award under an agreement to repay. *Estate of Jackson,* 79 *N.J.* 517, 520 (1979).

In most cases, we anticipate that the dynamics of the case will dictate the legal results. For example, in *Sotomayor v. Vasquez, supra,* 109 *N.J.* 258, the third-party recovery was minimal, if not inconsequential, in relation to the extent of the

recoverable PIP claims. Here, conversely, the third party was undoubtedly fully able to respond to any claim for damages. We believe that in most cases the Fund will be in the best position to evaluate the practicalities of any reimbursement or subrogation claim.

Because this case was presented to the trial court as a summary judgment motion, such issues were neither presented nor resolved. The trial court's opinion stated: "[t]here are no factual disputes and this opinion disposes of the litigation." *Wilson, supra,* 213 *N.J.Super.* at 596. It thus directed the Fund to pay the plaintiff's PIP claims upon presentation of proper proofs. In another case, the Fund might wish to seek reimbursement or subrogation if the settlement was exclusive of "PIP-type" damages, or to disallow recovery if the settlement duplicates recovery for items such as lost wages or medical specials. If there is one definite principle that emerges from our PIP law, policy, and precedent, it is that there shall be no double recovery of PIP benefits. *See Aetna Ins. Co. v. Gilchrist Bros., Inc., supra,* 85 *N.J.* 550, 562; *Cirelli v. Ohio Casualty Ins. Co.,* 72 *N.J.* 380, 387 (1977); *Estate of Gaskill v. Selected Risks Ins. Co.,* 202 *N.J.Super.* 138 (App.Div.), *certif. denied,* 102 *N.J.* 297 (1985).

For the reasons stated, the judgment of the Appellate Division is affirmed.

*For affirmance* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed* —None.