264 N.J. Super. 240 (1993)
624 A.2d 594
ALLSTATE INSURANCE CO. AND THE UNSATISFIED CLAIM AND JUDGMENT FUND, PLAINTIFFS-APPELLANTS,
v.
ROGER COVEN, M.D., VALLEY HOSPITAL, JOHN DOE, M.D., RICHARD ROE, M.D., JANE DOE, M.D., MARY ROE, M.D., ROBERT SMITH, M.D., JANE SMITH, R.N., KAREN BLACK, R.N., JANE DOE, R.N., MARY JONES, R.N. (ALL BEING FICTITIOUS NAMES), BETTY COYLE, AN INFANT BY HIS G/A/L, RICHARD COYLE, AND RICHARD COYLE, INDIVIDUALLY AND ARLENE COYLE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 23, 1993.
Decided April 29, 1993.
*242 Before Judges DREIER, SKILLMAN, VILLANUEVA.
John G. Tinker, Jr. argued the cause for appellants (Leary, Bride, Tinker & Moran, attorneys; Mr. Tinker on the brief).
Scott T. Heller argued the cause for respondent Roger Coven, M.D. (Giblin & Combs, attorneys; E. Burke Giblin, of counsel, Mr. Heller on the brief).
Peter R. Feehan argued the cause for respondent Valley Hospital (Feehan & Feehan, attorneys).
Michael B. Zerres argued the cause for respondent Richard Coyle (Blume Vazquez Goldfaden Berkowitz & Donnelly, attorneys; Mr. Zerres, on the brief).
Timothy L. Barnes argued the cause for respondent Arlene Coyle (Barnes & Barnes, attorneys; Mr. Barnes on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
*243 Plaintiffs, Allstate Insurance Company and the Unsatisfied Claim and Judgment Fund, appeal from a July 6, 1992 judgment dismissing their claims for subrogation or for reimbursement of benefits paid or to be paid to or for the benefit of Arlene Coyle and Brett Coyle. In addition, Allstate filed a Morris County action on November 13, 1991, discussed infra. Arlene Coyle and Brett Coyle (through his guardian ad litem, Richard Coyle), earlier brought companion suits against defendants Roger Coven, M.D., and Valley Hospital alleging medical malpractice.
On October 7, 1987, Arlene Coyle was involved in a one-car automobile accident while eight and one-half months pregnant. When her car hit a flagpole, her abdomen was forced against the steering wheel. She was taken by ambulance to Valley Hospital in Ridgewood, New Jersey, where her son, Brett Coyle, was delivered by caesarean section. Brett was born with severe brain damage, requiring that he continue to receive constant medical and attendant care. As the insurer of Arlene Coyle's vehicle, Allstate Insurance Company has paid over $1,000,000[1] in medical expenses pursuant to personal injury protection ("PIP") coverage.
Count four of Brett's complaint, dated September 20, 1988, claimed medical expenses incurred as a result of the infant's injuries.[2] The parties in the malpractice case reached a tentative settlement for $1,200,000, $100,000 of which was to be paid by Allstate, a non-party to the action. We assume Allstate made *244 such payment in its capacity as liability carrier for Arlene Coyle, rather than as her PIP insurer.
During an October 18, 1991 appearance before Judge Sciuto to approve the overall settlement of $1,200,000, Allstate notified the court of its pursuit of its legal remedies in the Morris County action seeking subrogation to the Coyles' rights to collect PIP benefits. The court suggested that Allstate file a new complaint for declaratory relief to determine all of its rights. Allstate filed the complaint on November 13, 1991 also seeking arbitration against Dr. Coven and Valley Hospital. Judge Sciuto entered a conditional settlement order on December 1, 1991 which memorialized the agreement. On January 24, 1992, the judge consolidated the Coyles' cases with Allstate's Morris County action. On cross motions for summary judgment, Judge Sciuto on July 6, 1992 ruled in favor of defendants Coven and Coyle in the declaratory judgment action, and dismissed plaintiffs' complaint.
In reaching his decision, the judge concluded that Allstate and the UCJF possessed no subrogation rights. He further determined that Allstate had no direct rights of action against the malpractice tortfeasors. The latter conclusion was premised upon three findings: First, plaintiffs' claim was time-barred by the two year limitation stated in N.J.S.A. 39:6A-9.1. Second, allowance of a direct action for reimbursement against the tortfeasors in this case would "substantially interrupt the settlement process" between malpractice insurers and victims and would have a ripple effect on all automobile accident/medical malpractice claims. Third, the bases for Allstate's payment of PIP benefits and the claims settled in the Coyles' medical malpractice settlement were factually distinguishable.
Initially, we agree with the trial judge's assessment of Allstate's subrogation rights. In Aetna Ins. Co. v. Gilchrist Brothers, Inc., 85 N.J. 550, 428 A.2d 1254 (1981), the Supreme Court traced the history of a PIP carrier's right of subrogation. It ruled that N.J.S.A. 39:6A-12 precluded the possibility of any subrogation *245 action by a PIP benefits insurer against an insured tortfeasor. Id. at 562, 567, 428 A.2d 1254. The Court noted that N.J.S.A. 39:6A-12 (in its pre-1983 language) mandated the inadmissibility of evidence of losses collectible under personal injury protection coverage. The statute stated: "Evidence of the amounts collectible or paid pursuant to [PIP coverage] ... to an injured person is inadmissible in a civil action for recovery of damages for bodily injury by such injured person." (emphasis added). Aetna thus reasoned that the absence of an insured's right to introduce such evidence in another New Jersey legal action precluded the existence of any right of subrogation with respect to such a New Jersey claim[3] because subrogation merely allows an insurer to step into the shoes of the insured. Aetna, 85 N.J. at 567, 428 A.2d 1254 ("Since the named insured had no right to which Aetna could be subrogated, its claim must be denied").
Subsequent to the Aetna decision, the Legislature enacted N.J.S.A. 39:6A-9.1, which conferred a statutory right of recovery for PIP insurers from certain tortfeasors.
An insurer ... paying ... personal injury protection benefits ... as a result of an accident occurring within this State, shall, within two years of the filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection or medical expense benefits coverage.... In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether an insurer ... is legally entitled to recover the amount of payments and the amount of recovery, including the costs of processing benefit claims and enforcing rights granted under this section, shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration.
This provision provides a new direct right of action against certain tortfeasors for reimbursement of PIP benefits, but it does not establish any subrogation rights for the PIP insurer, through *246 its insured.[4]Sherman v. Garcia Const., Inc., 251 N.J. Super. 352, 356, 598 A.2d 242 (App.Div. 1991) ("The enactment of section 9.1 granted anew a right of reimbursement to PIP providers. That right is primary and not linked to any purported subrogation rights of the beneficiary of the PIP benefits"); accord Buoni v. Browning Ferres Industries, 219 N.J. Super. 96, 98-101, 529 A.2d 1044 (Law Div. 1987). It appears, therefore, that while Allstate may have its § 9.1 claim, the blanket prohibition of subrogation rights announced in Aetna, supra, is still applicable.[5]See e.g., Range v. McLarty, 246 N.J. Super. 196, 200, 586 A.2d 1364 (Law Div. 1990); see also Hanover Ins. Co. v. Lewis, 260 N.J. Super. 380, 389, 616 A.2d 963 (Law Div. 1992) (courts apply the statute to effect a direct right of reimbursement against a tortfeasor's insurer).
Thus, we determine that plaintiffs in the present case possess no right of subrogation through their insured. The fact that the alleged tortfeasors in the present case are not operators of an automobile, but a physician and hospital, is of no consequence under N.J.S.A. 39:6A-9.1. Plaintiffs' claims are limited to their *247 statutory right of direct action against the alleged insured medical tortfeasors.
As quoted earlier, N.J.S.A. 39:6A-9.1 confers a direct right under the law to effect reimbursement from non-PIP-carrying tortfeasors "within two years of the filing of the claim...." We must determine the meaning of this quoted language. Plaintiffs filed their November 1991 complaint for a declaratory judgment and April 1992 direct complaint against Coven and Valley Hospital for reimbursement of PIP payments over three years after plaintiff Allstate began paying PIP benefits to its insured on January 11, 1988.
Plaintiffs assert that their claims are unaffected by the two-year limitation because they relate back to Brett Coyle's medical malpractice claim, which was filed in a timely fashion on or about September 20, 1988. The fourth count of Brett Coyle's complaint sought damages for Richard Coyle's expenditure of "large sums of money for medical and other care...." This count of Brett's complaint cannot be a basis for plaintiffs' claim. If the expenses are not those claimed under PIP, the insurer certainly has no interest in them. If such expenses were those paid by the PIP carrier, they would be inadmissible in Brett's later action. N.J.S.A. 39:6A-12.[6] As Allstate cannot stand in the shoes of its insured, it must assert an individual claim in a timely manner. In light of the Supreme Court ruling forbidding PIP insurers from "stand[ing] in the shoes of the insured....", Aetna, 85 N.J. at 567, 428 A.2d 1254, for the purpose of reimbursement actions, we will not permit plaintiffs to bootstrap their arguably late claims into the original malpractice claims of the Coyles.
There is no question that the earliest date that plaintiffs could be shown to have asserted their "right to recover the amount of *248 payments from any other tortfeasor" (N.J.S.A. 39:6A-9.1) is November 13, 1991, the filing date of plaintiffs' Morris County complaint against the medical defendants and the Coyles. Even then there was no mention of the § 9.1 claim, but a court might be persuaded to read the complaint expansively. Brett Coyle's initial action was filed on or about September 20, 1988 against the medical defendants. Allstate may or may not contend that it did not know of such complaint within a reasonable time following its filing. We mention this because of a potential problem which could bring competing public policy considerations into apposition. If the "filing of the claim" is deemed to mean the initial PIP claim filed with the automobile insurer, a later medical malpractice claim, product liability claim, dram shop claim or other assertion of sequential or contemporaneous non-automobile negligence could bear on the PIP carrier's statutory right to reimbursement.
Theoretically, malpractice committed in a treatment for the automobile accident might occur two years and one day following the filing of the initial PIP claim. The unfairness is patent if the PIP carrier's right to make a claim was limited to the initial two-year period, and if the carrier is precluded from then giving notice of its § 9.1 claim. The proximate cause related to the automobile accident, perhaps ten percent, and the malpractice, ninety percent, as the parties tentatively allocated herein, could never be considered. Such an interpretation would saddle automobile insurers with what essentially should have been a medical malpractice claim.
Similarly, what initially appears to be a simple automobile accident could, after investigation, implicate a products liability, dram shop or other claim contemporaneously causing the original injury. The PIP carrier might not be notified of the claim until after the two-year period. Without bad faith, a plaintiff might file a complaint just prior to the expiration of the two-year period, with the PIP carrier receiving later notification. In the case of an infant plaintiff, there may be no complaint at all until the two-year *249 period has long expired. We should not interpret the statute so as to work a gross injustice on the PIP carrier, or more accurately, on all of New Jersey's insured motorists.[7]
We opt to enforce the statute as it is written, requiring the PIP carrier to assert its right of reimbursement within two years of the initial filing of the PIP claim, but with a caveat. To avoid the problems we have noted, we will interpret the statute as including a discovery rule. Usually, the PIP carrier will have notice of the third party claim at the time it is made, and this will be well within the two-year period. If, however, the claim is made outside the two-year period, or, if made within the two-year period and no timely notice is given to the PIP carrier so that it can assert its right of reimbursement in a timely manner, the trial court, after an appropriate inquiry into the reasons for the delay, may direct that the limitations period be extended. Cf. Lopez v. Swyer, 62 N.J. 267, 274, 300 A.2d 563 (1973). We determine that this relief is needed because the Legislature could not have intended that meritorious reimbursement claims be excluded in situations where the PIP carrier could not, through no fault of its *250 own, comply with the statute.[8] Settlements in such cases might be more difficult, but no more so than if timely notice had been given to the PIP carrier, or if the subsequent event upon which reimbursement is claimed occurred within the two-year period.
Returning to the case before us, we have assumed (because of lack of information to the contrary) that Allstate knew of the malpractice claim at or about the time the Morris County complaint was filed. Dr. Coven's answer in the Bergen County action asserts only that Allstate knew of the malpractice claim "on or before October 18, 1991." We may, of course, be incorrect in our assumption. There may also be some other equitable basis to toll the statute, for example, extending settlement discussions beyond the filing date for a claim. See Tantum v. Binz, 91 N.J. 426, 452 A.2d 667 (1982), reversing on dissent, 186 N.J. Super. 296, 302, 452 A.2d 667 (App.Div. 1981). We note that at oral argument the physician's attorney claimed that Allstate was "clearly on notice of this claim" from the time it first received the bills for the child's treatment, approximately one month following the accident. If this is true, there is no need even for a hearing on remand, but there should be some inquiry into whether Allstate was on notice that there was a claim of malpractice. It is difficult for us to imagine that with seven figure medical bills, Allstate did not monitor the case and become aware soon after the medical malpractice complaints were filed that there was potential third party recovery and therefore a basis for its reimbursement claim under § 9.1. But, considering the magnitude of the payments, there should be such a positive factual finding before the reimbursement *251 claim is finally precluded.[9]
We therefore modify the order appealed from, not on the trial judge's analysis of the law, but only to permit an Evid.R. 8 hearing to determine whether a two-year limitation of N.J.S.A. 39:6A-9.1 should be tolled. The summary judgment appealed from is modified as noted herein and otherwise affirmed. The matter is remanded to the Law Division for further proceedings in accordance with this opinion.
NOTES
[1] Allstate's Bergen County complaint alleges payment in excess of $1,000,000. The initial claim for Brett's medical expense was for approximately $100,000. In actuality, Allstate is responsible for only the first $75,000. By statute, the UCJF must reimburse the PIP carrier for medical payments over this sum. N.J.S.A. 39:6A-4a (later amended by L. 1990, c. 8 § 4, effective March 12, 1990, limiting payment for medical expense to "an amount not to exceed $250,000 per person per accident.") The Fund is therefore the real party in interest.
[2] Insofar as these medical expenses were already collectible from Allstate as PIP payments, they were legally excluded from the malpractice action. This will be discussed in more detail, infra.
[3] The Court recognized that a non-New Jersey claim may require other reasoning, since the New Jersey evidence bar would be ineffective in another state. 85 N.J. at 562-564, 428 A.2d 1254; Cirelli v. The Ohio Cas. Ins. Co., 72 N.J. 380, 386, 371 A.2d 17 (1977).
[4] N.J.S.A. 39:6A-9, the short-lived predecessor of 6A-9.1, likewise created only a direct statutory right of action, although it used the term "subrogation."

Though section 9 uses the word "subrogation," in fact the right created therein was not one of "subrogation" because the insurer's right to recover was not derived from the insured.... The insurer did not stand in the shoes of the insured, but was able to obtain recovery of PIP benefits only because of section 9.
[Aetna, 85 N.J. at 567, 428 A.2d 1254].
[5] A related issue was expressly left unresolved by the Supreme Court's dictum in Wilson v. Unsatisfied Claim and Judgment Fund Bd., 109 N.J. 271, 279-280, 536 A.2d 752 (1988). There, the Supreme Court stated, "[W]e do not foreclose by our disposition the possibility that the Fund [as a primary payor] should appropriately be subrogated to or reimbursed for the injured party's right to recover `PIP-type' damages from an insured third party." Ibid. The Supreme Court left resolution of that issue for a case which presented that specific issue. Ibid. In the case before us the UCJF is an indemnitor of the § 9.1 claim, not a primary payor; thus the absence of the non-admissibility language in the Fund Act, central to the Wilson discussion, is irrelevant here.
[6] N.J.S.A. 39:6A-12 was amended when the direct action was authorized to permit introduction by the PIP insurer of the amount of bills it had paid only in direct reimbursement actions under N.J.S.A. 39:6A-9.1.
[7] On the other hand, if we were to hold that the "filing of the claim" refers to the claim for each reimbursement, and therefore that any § 9.1 claim by a PIP carrier relates back for two years from the carrier's assertion of a right to recover payments from another tortfeasor, settlements in suits against additional defendants would be extremely difficult. No defendant would be able to buy its peace without the PIP carrier's participation. The injured plaintiff could not effect double recovery, but would have to seek its medical reimbursement against the PIP carrier, who in turn could claim reimbursement from the additional defendants at any time. This difficulty, however, is not insurmountable, since defendants regularly settle with injured parties who require continuing medical treatment. The cost of the treatment is evaluated and either discounted and paid in a lump sum or paid through a structured settlement. But in all cases where there was any automobile involvement, the PIP carrier would have to be added as an additional party, notwithstanding the fact that the driver or owner of the automobile may not even be a party to the litigation (as in the case before us). Defendants would be forced to seek out the PIP carrier, rather than the PIP carrier being required to assert its right of recovery, as envisioned by N.J.S.A. 39:6A-9.1.
[8] We are aware that the Supreme Court in Brookins v. Murray, 131 N.J. 141, 619 A.2d 583 (1993), has narrowly read N.J.S.A. 39:6-65, where the Legislature had carefully defined the instances under which the time periods for giving a notice of claim could be extended. Here, however, the Fund acts as an excess carrier. The application of the discovery rule here would aid in the preservation of the Fund, and to effect a just apportionment of responsibility among tortfeasors.
[9] We leave to another day whether Allstate can be held liable to the UCJF for failure to give timely notice.