637 A.2d 191

UNSATISFIED CLAIM AND JUDGMENT FUND BOARD AND COMMISSIONER OF INSURANCE ON BEHALF OF THE UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, PLAINTIFFS–APPELLANTS, v. NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 6, 1993—Decided February 3, 1994.

Before Judges KING, A.M. STEIN and A.A. RODRÍGUEZ.

*Beattie Padovano,* attorney, argued the cause for appellants (*Antimo A. Del Vecchio,* of counsel and on the brief).

*Brian G. Steller,* attorney, argued the cause for respondent (*Connell, Foley & Geiser,* attorneys, *Mr. Steller,* of counsel; *Kathleen M. Cehelsky,* on the brief).

The opinion of the court was delivered by

A.A. RODRÍGUEZ, J.S.C. (temporarily assigned).

The issue presented in this case is whether the Unsatisfied Claim and Judgment Fund (Fund) can recover personal injury protection (PIP) benefits paid to passengers injured while traveling in an uninsured motor vehicle from the insurer of a third party tortfeasor. We hold that the Fund cannot make such a recovery.

On January 7, 1989, Jose Fernandez, the owner and operator of an uninsured vehicle was travelling north on Paulson Avenue in Clifton, New Jersey at the same time that a vehicle owned and operated by John S. Zane was traveling south on the same street. The two vehicles collided injuring Fernandez and his two passengers. Zane's vehicle was insured by New Jersey Manufacturers Insurance Company, (NJM).

The passengers sued Zane and the Fund for bodily injuries. After lengthy negotiations, the Fund agreed to pay the passengers' PIP benefits in exchange for the right to recover such benefits from Zane's insurer.

The Fund filed this action against NJM as the insurer of third party tortfeasor John Zane to recover all PIP benefits paid to the passengers. It promptly moved for summary judgment. The Law Division judge denied the Fund's motion, granted NJM's cross-motion and dismissed the complaint. We affirm.

The Fund advances two theories for recovery and cites as authority *N.J.S.A.* 39:6–86.6 (the Fund Law) and *N.J.S.A.* 39:6A–9.1 (the No–Fault Law), as interpreted in *Wilson v. Unsatisfied Claim and Judgment Fund Bd.*, 109 *N.J.* 271, 536 *A.*2d 752 (1988).

## I. *N.J.S.A.* 39:6–86.6 (THE FUND LAW)

The Fund wants this court to interpret the last four lines of *N.J.S.A.* 39:6–86.6 to permit recovery of PIP benefits from the PIP carrier of *any* party which was insured at the time of the accident. This is an improper and unreasonable reading of the statute which provides in relevant part:

The Commissioner shall be entitled to recover on behalf of [the Fund] for all payments made by it pursuant to sections 7 and 10 of this Act, regardless of fault,

from any person who owned or operated the automobile involved in the accident and whose failure to have the required insurance coverage in effect at the time of the accident resulted in the payment of personal injury protection benefits.

If the identity of the owner and operator is not ascertained until after [PIP] benefits have been paid then the Commissioner shall be entitled to recover for such payments, regardless of fault, from the operator if he was driving without the owner's permission or from the operator and the owner if he was driving with the owner's permission, *or, in either case, from the insurer if there is an insurance policy providing [PIP] benefits that was in effect at the time of the accident with respect to such automobile.*

[*N.J.S.A.* 39:6–86.6 (emphasis added)]

■  Our duty is to construe a statute as it is written and to enforce the legislative will as written, not according to some unexpressed intention. *Dacunzo v. Edgye,* 19 *N.J.* 443, 451, 117 *A.*2d 508 (1955). Statutes should be read in a reasonable manner to include only those situations legitimately contemplated by the Legislature. *N.J. State College Locals v. State Bd. of Higher Ed.,* 91 *N.J.* 18, 36, 449 *A.*2d 1244 (1982).

■  The reasonable and logical interpretation of *N.J.S.A.* 39:6–86.6 is that it provides two separate avenues of recovery for the Fund. The first paragraph gives the Fund the right to seek reimbursement from the party whose failure to carry PIP coverage caused the payment in the first place, *i.e.,* the uninsured motorist. The second paragraph provides for recovery from owners and operators who are initially unascertained and later identified. If such owners or operators were insured at the time of the accident, then recovery may be made against their insurers. The reference to "insurer" in the last sentence of section 86.6 is to the insurers of operators and owners unknown at the time that PIP payments are made and who are later identified. Thus, under *N.J.S.A.* 39:6–86.6, the Fund can only recover from owners and operators "whose failure to have the required insurance coverage ... resulted in the payment of personal injury protection benefits," or whose identity, "is not ascertained until after personal injury protection benefits are paid." In the latter case the right to recover extends to the insurer, if any, of the operator and the owner (if the operation was with the owner's permission). Since

NJM's insured does not come within either of the two contemplated categories, the Fund has no claim against the carrier itself.

## II.  *N.J.S.A.* 39:6A–9.1 (NO–FAULT LAW)

■ The Fund cannot assert a right of recovery based on *N.J.S.A.* 39:6A–9.1.  The first paragraph of that section reads in relevant part:

> An insurer, health maintenance organization or governmental agency paying benefits ... [for PIP] .... as a result of an accident occurring within this State, shall, within two years of filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain [PIP] or medical expense benefits coverage, other than for pedestrians, under the laws of this State, ... or although required did not maintain (PIP) or medical expense benefits coverage at the time of the accident.
> [*N.J.S.A.* 39:6A–9.1]

■ The Legislature enacted *N.J.S.A.* 39:6A–9.1 in 1983 in response to the decision in *Aetna Ins. Co. v. Gilchrist Bros., Inc.,* 85 *N.J.* 550, 428 *A.*2d 1254 (1981), where the Supreme Court held that the New Jersey "No–Fault" law precludes reimbursement of PIP benefits from an insured tortfeasor.  The basic scheme of PIP is that each car in personal use should take care of its own passengers and that each family car should take care of that family.  *Sotomayor v. Vasquez,* 109 *N.J.* 258, 261, 536 *A.*2d 746 (1988).

After *N.J.S.A.* 39:6A–9.1 was enacted, our Supreme Court observed that the Legislature intended to overrule *Aetna* in part by conferring a primary right of reimbursement on the injured party's insurer against a tortfeasor who was either not required to maintain coverage, or who failed to carry PIP protection.  *Wilson v. Unsatisfied Claim and Judgment Fund Bd., supra,* 109 *N.J.* at 280, 536 *A.*2d 752.  The Fund contends that *Wilson* permits the Fund to recover PIP benefits from not only the uninsured motorist whose failure triggered the Fund's payment, but also from the insurer of *any* third party tortfeasor who maintained a policy covering PIP benefits at the time of the accident.  The Fund relies on dictum in the *Wilson* decision and on the last paragraph of *N.J.S.A.* 39:6A–9.1 to support its position.

In *Wilson,* the Supreme Court held that the policies behind PIP coverage would, "best be served by allowing a passenger in an uninsured vehicle to [immediately] recover PIP benefits from the Fund despite the availability of a third party claim." *Wilson, supra,* 109 *N.J.* at 279, 536 *A.*2d 752. The Court recognized that its decision would present certain problems such as depletion of the Fund's assets but chose not to address them at the time, commenting that

> we do not foreclose by our disposition the possibility that the Fund should appropriately be subrogated to or reimbursed for the injured party's right to recover 'PIP-type' damages from an insured third party. The provision of *N.J.S.A.* 39:6A–12 that bars recovery in a tort action of the 'amounts collectible or paid [as PIP benefits]' is not repeated in the Fund Law.
>
> ".... Rather than attempt to resolve all of the latent difficulties in our disposition of the basic issues presented, we shall await the presentation of specific problems."
>
> [*Id.* at 279, 280, 536 *A.*2d 752.]

This case does not present the type of problem discussed in *Wilson.* The facts are distinguishable. In *Wilson,* the infant plaintiff was injured while traveling in an uninsured motor vehicle which collided with a school bus owned and operated by a municipality. The bus was not required to maintain PIP insurance. Here, NJM's insured was required to and did maintain PIP coverage. It is therefore unnecessary to determine whether an injured party who receives PIP-type benefits from the Fund, as opposed to a PIP carrier, retains the common law right to seek special damages from a tortfeasor which can then be subrogated to the Fund.

█ The Fund also contends that the public policy of the State as well as the decisions interpreting the Fund Law lead one to conclude that it is only a remedy of last resort and must be reimbursed whenever possible. Our responsibility, however, is to apply the law as it exists. *Petrageli v. Barrett,* 33 *N.J.Super.* 378, 386, 110 *A.*2d 313 (App.Div.1954). It is not our function to interpret a statute to read contrary to the legislative intent, and any request for statutory modification should be addressed to the Legislature not the courts. *Mountain Lakes Bd. of Education v.*

*Maas,* 56 *N.J.Super.* 245, 262 (App.Div.), *aff'd,* 31 *N.J.* 537, 158 *A.*2d 330 (1959).

Affirmed.