JUSTICE FERNANDEZ-VINA
dissenting.
As the majority correctly recognizes, whether the New Jersey False Claims Act (NJFCA), N.J.S.A. 2A:32C-1 to -18, places certain temporal limits on the Attorney General’s subpoena power is a matter of statutory interpretation. I dissent because the majority fails to properly credit the plain language of N.J.S.A. 2A:32C-14, which does not limit the Attorney General’s power to issue subpoenas following the unsealing of a qui tarn complaint or an intervention decision. Even if we were to venture beyond the plain language of N.J.S.A. 2A:32C-14, there still would be no basis to conclude that the Attorney General’s subpoena power is constrained in this manner.
I.
When interpreting a statute, a court’s “overriding goal” is to discern legislative intent. Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386, 143 A.3d 254 (2016) (quoting Jersey Cent. Power & *291 Light Co. v. Melcar Util. Co., 212 N.J. 576, 586, 59 A.3d 561 (2013)). It is a well-established canon of statutory construction that the starting point for determining the Legislature’s intent is the language of the statute itself. Ibid. If the language is clear and unambiguous on its face, that is the end of the interpretive inquiry. See ibid. (‘“If the plain language leads to a clear and unambiguous result, then our interpretive process is over.’ It is only when there is ambiguity in the language that we turn to extrinsic evidence, such as legislative history.” (quoting Richardson v. Bd. of Trs., Police & Firemen’s Ret. Sys., 192 N.J. 189, 195-96, 927 A.2d 543 (2007))).
The provision of the NJFCA that governs the Attorney General’s subpoena power, N.J.S.A. 2A:32C-14, provides in pertinent part that,
a. If the Attorney General has reason to believe that a person has engaged in, or is engaging in, an act or practice which violates this act, or any other relevant statute or regulation, the Attorney General or the Attorney General’s designee may administer oaths and affirmations, and request or compel the attendance of witnesses or the production of documents. The Attorney General may issue, or designate another to issue, subpoenas to compel the attendance of witnesses and the production of books, records, accounts, papers and documents.
A plain reading of this statutory text makes it crystal clear that the Attorney General has broad power to issue subpoenas. Other than the prerequisite that the State have a “reason to believe” a person has violated the NJFCA or “any other relevant statute or regulation,” the text places no temporal restriction on the Attorney General’s subpoena power. Because the plain language of N.J.S.A. 2A:32C-14 does not impose upon the Attorney General a requirement that subpoenas be issued before the unsealing of a qui tarn complaint or an intervention decision, the Court should not place its own limits on the statute. Application of the plain language rule should be the end of the analysis.
II.
Notwithstanding the clear statutory text, the majority posits that N.J.S.A. 2A:32C-14 is ambiguous and holds that the NJFCA establishes a temporal limitation on when the Attorney General *292 may issue subpoenas. The majority’s position violates accepted principles of statutory construction. See, e.g., State v. Smith, 197 N.J. 325, 332, 963 A.2d 281 (2009) (“Plainly, courts are not to read into a statute words that were not placed there by the Legislature.”). Moreover, even looking beyond the plain language of N.J.S.A. 2A:32C-14, there is still no support for the majority’s conclusion,
A.
Relative to the federal False Claims Act, 31 U.S.C.A. 3729 to 3733, the NJFCA was enacted quite recently. Compare 12 Stat. 696 (March 2, 1863), and United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1153 (3d. Cir. 1991) (noting the federal “False Claims Act was adopted in 1863”), with L. 2007, c. 265 (approved Jan. 13, 2008), and State ex rel. Hayling v. Corr. Med. Servs., Inc., 422 N.J.Super. 363, 367, 28 A.3d 1246 (App. Div. 2011) (recognizing the NJFCA “was enacted on January 13, 2008”). A cardinal rule of statutory interpretation is that courts should “presume a legislature had existing federal statutes on the same subject in mind when enacting a state statute.” Norman J. Singer & J.D. Shambie Singer, 2B Sutherland Statutory Construction § 51:6 (7th ed. 2008). Indeed, the statute’s legislative history makes clear that the Legislature had the federal False Claims Act in mind when it adopted the NJFCA. See e.g., Hayling, supra, 422 N.J.Super. at 372, 28 A.3d 1246 (quoting NJFCA co-sponsor, Assemblyman Herb Conaway, Jr., describing the Act to the General Assembly’s Judiciary Committee “as New Jersey’s whistle blower statute which tracks the federal law”). Although the Appellate Division in Hayling, declined to give interpretive weight to the Assemblyman’s statement in considering whether the NJFCA should be given retroactive effect, the statement nonetheless demonstrates that the NJFCA is modeled on the similarly worded federal False Claims Act.
*293 The section of the federal False Claims Act that governs the use of civil investigative demands (CIDs) is 31 U.S.C.A. § 3733.[4] That section stipulates that “the [U.S.] Attorney General, or a designee, may, before commencing a civil proceeding under section 3730(a) or other false claims law, or making an election under section 3730(b), issue in writing and cause to be served upon such person, a [CID].” Ibid, (emphasis added). Thus, the federal False Claims Act, after which the NJFCA was modeled, expressly limits the use of CIDs to the time period before the Attorney General makes an election whether to intervene in a qui tam action or commences a false claims action. Those same temporal limitations simply do not appear in the NJFCA. The Legislature’s election to depart from the federal False Claims Act in this respect evidences legislative intent not to impose a requirement that the Attorney General issue subpoenas before the unsealing of a qui tam complaint or an intervention decision. See Airwork Serv. Div., Div. of Pac. Airmotive Corp. v. Director, Div. of Taxation, 97 N.J. 290, 294, 478 A.2d 729 (1984) (“Where the Legislature adopts a new law, using as a source a statute theretofore enacted in another jurisdiction, but omits a provision of the source statute, the omission is construed as being deliberate.” (citation omitted)), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985).
Notably, the Legislature has twice declined to follow the federal False Claims Act’s CID provision and place time restrictions on the New Jersey Attorney General’s subpoena power. When the NJFCA was first promulgated in 2008, the federal False Claims Act limited the U.S. Attorney General’s power to issue CIDs to the period “before commencing a civil proceeding,” 31 U.S.C.A. § 3733(a)(1) (2007), but our State’s Legislature declined to incorporate any such restriction into the NJFCA.
In 2009, Congress “clarified” the language of the federal False Claims Act, including 31 U.S.C.A. § 3733(a)(1), by amending it to *294 its current form. See Appendix to Letter from Brian A. Benczkowski, Off. of Legis. Aff., U.S. Dep’t of Justice, to Sen. Patrick J. Leahy 15-16 (Feb. 21, 2008), https://www.justice.gov/archive/ola/ views-letters/110-2/02-21-08-s2041-false-claims-correction-act.pdf (recommending that Congress “clarify that the [U.S.] Attorney General (or his designee) may issue CIDs in connection with a qui tam action prior to the Government’s election to intervene or decline to intervene in that action”); see also Pub. L. No. 111-21, § 4, 123 Stat. 1616 (amending CID provision in section entitled “CLARIFICATIONS TO THE FALSE CLAIMS ACT TO REFLECT THE ORIGINAL INTENT OF THE LAW” “by striking ‘the Attorney General may, before commencing a civil proceeding under section 3730 or other false claims law,’ and inserting ‘the Attorney General, or a designee, may, before commencing a civil proceeding under section 3730(a) or other false claims law, or making an election under section 3730(b)’ ” (emphasis added)).
In 2010, after that federal clarification, the New Jersey Legislature amended the NJFCA to align it more closely with the federal False Claims Act. See Sponsor’s Statement to S. 2534 4 (L. 2009, c. 265 (approved Jan. 17, 2010)). Although it amended several provisions of the NJFCA in response to Congress’s amendments to the federal False Claims Act, the Legislature chose not to modify the NJFCA in one key respect: it did not revise N.J.S.A. 2A:32C-14(a), the provision governing the New Jersey Attorney General’s subpoena power. Thus, even though Congress amended 31 U.S.C.A. § 3733(a)(1), our State Legislature again declined to adopt the time limitations Congress placed on the federal subpoena power.[5] Accordingly, insofar as N.J.S.A. 2A:32C-14(a) is ambiguous concerning temporal restrictions placed on the Attorney *295 General’s subpoena power, the legislative history of the NJFCA should dissipate any doubts as to the Legislature’s intent.
B.
In addition, it is clear that the Legislature knew how to include time limitations on the Attorney General’s investigatory powers because the Legislature has done so elsewhere. For example, our State’s racketeering statute limits the Attorney General’s issuance of investigative interrogatories to “prior to the institution of a civil or criminal proceeding.” N.J.S.A. 2C:41-5(a). Likewise, New Jersey’s antitrust statute limits the Attorney General’s issuance of subpoenas to “prior to the institution of a criminal or civil action.” N.J.S.A. 56:9—9(a)(1).
When the Legislature imposes certain limits on the Attorney General’s investigative powers in some statutes but excludes those limits in others, such restrictions should not be inferred where excluded. See Richerson v. Jones, 551 F.2d 918, 928 (3d Cir. 1977) (“[W]here a statute with respect to one subject contains a given provision, the omission of such provision from a similar statute is significant to show a different intention existed.” (quoting Gen. Elec. Co. v. S. Const. Co., 383 F.2d 135, 139 (5th Cir. 1967), cert. denied, 390 U.S. 955, 88 S.Ct. 1049, 19 L. Ed.2d 1148 (1968))). The NJFCA’s silence on temporal restrictions in the face of the Legislature’s decision to impose time limits on the Attorney General’s investigative powers in the State’s racketeering and antitrust laws reinforces the legislative intent not to limit the Attorney General’s subpoena power in this manner when investigating false claims.
C.
Finally, we have “consistently stated that[,] ‘[i]n reading and interpreting a statute, primary regard must be given to the fundamental purpose for which the legislation was enacted.’ ” State v. Tischio, 107 N.J. 504, 511, 527 A.2d 388 (1987) (quoting N.J. Builders, Owners & Managers Ass’n v. Blair, 60 N.J. 330, *296 338, 288 A.2d 855 (1972)), appeal dismissed, 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988). The text of the NJFCA tells us that it is remedial legislation. N.J.S.A. 2A:32C-17 (“This Act shall be liberally construed to effectuate its remedial and deterrent purposes.”); cf. United States v. Neifert-White Co., 390 U.S. 228, 233, 88 S.Ct. 959, 962, 19 L.Ed.2d 1061, 1065 (1968) (noting that federal False Claims Act is “remedial” and “should not be given [a] narrow reading”).
A basic rule of statutory interpretation is that remedial statutes should be construed broadly to effectuate their intended purpose. Smith v. Millville Rescue Squad, 225 N.J. 373, 390, 139 A.3d 1 (2016) (noting that remedial legislation should be “liberally construed”); Young v. Sobering Corp., 141 N.J. 16, 25, 660 A.2d 1163 (1995) (“Where the Legislature’s intent is remedial, a court should construe a statute liberally.”). By reading a temporal limitation into the NJFCA’s subpoena provision, the majority narrowly construes a significant tool that the Attorney General routinely utilizes to combat fraud and abuse in State programs and procurement. The majority’s reasoning, therefore, runs contrary to yet another fundamental rule of statutory construction.
III.
In holding that the NJFCA limits the Attorney General’s power to issue subpoenas following the unsealing of a qui tarn complaint or an intervention decision, the majority points to N.J.S.A. 2A:32C-5 and N.J.S.A. 2A:32C-6. Specifically, the majority highlights sections 5(g) and 6(f) of the NJFCA. The majority suggests that those specific provisions should prevail over the more general provision governing subpoenas. In concluding that sections 5(g) and 6(f) impose temporal parameters around the Attorney General’s subpoena power, the majority misapprehends the interplay between those statutory provisions and N.J.S.A. 2A:32C-14.
The “specific-over-general” maxim upon which the majority relies applies only “when there is a conflict between general and specific provisions of a statute.” Wilson v. Unsatisfied Claim & Judgment Fund Bd., 109 N.J. 271, 278, 536 A.2d 752 (1988); see *297 also In re Phila. Newspapers, LLC, 599 F.3d 298, 307 (3d Cir. 2010) (“Considering the application of the canon ‘the specific governs the general,’ the [Supreme] Court reasoned that it only applied where the more specific provision clearly placed a limitation on the general.” (citing Varity Corp. v. Howe, 516 U.S. 489, 511, 116 S.Ct. 1065, 1077, 134 L.Ed.2d 130, 148 (1996))).[6]
Here, there is no conflict between N.J.S.A. 2A:32C-5(g) and N.J.S.A. 2A:32C-6(f), and N.J.S.A. 2A:32C-14. Section 5(g) sets limits on the seal period and the Attorney General’s time to decide to intervene as of right, not on his time to investigate. The majority reasons that if the Attorney General were allowed to issue subpoenas after a qui tam lawsuit is unsealed, or after the time for making the initial intervention decision as of right, the 60-day period in section 5(g) would be rendered nugatory. This argument erroneously presupposes that subpoenas can be issued only to determine whether to intervene as of right in a qui tam suit. The NJFCA makes clear that the Attorney General can investigate a relator’s claims for purposes other than intervention in a qui tam suit. See N.J.S.A. 2A:32C-14(a) (providing that Attorney General may issue subpoenas if he or she “has reason to believe that a person has engaged in ... an act or practice which violates this act, or any other relevant statute or regulation” (emphasis added)); N.J.S.A. 2A:32C-6(h) (stipulating that “application of one civil remedy ... shall not preclude the application of any other remedy, civil, administrative or criminal”). Hence, reading the NJFCA to impose no time limit on the Attorney General’s subpoena power does not render section 5(g) meaningless.[7]
*298 In addition, section 6(f), which permits the Attorney General to seek intervention at any time upon a showing of good cause, does not conflict with N.J.S.A. 2A:32C-14. By allowing intervention for good cause after the seal has been lifted, section 6(f) recognizes that the Attorney General might uncover additional information through continued investigation that would prompt him to intervene later in the matter. One avenue by which the Attorney General could uncover additional information is through the subpoena power granted by N.J.S.A. 2A:32C-14. Section 6(f) and N.J.S.A. 2A:32C-14 thus do not conflict. If anything, section 6(f) undermines the majority’s holding that the Attorney General’s power to issue subpoenas is extinguished by the unsealing of a qui tarn complaint or an intervention decision.
For those reasons, I respectfully dissent from the judgment of the Court.

 "A CID is analogous to an investigative subpoena." FTC v. Mfrs. Hanover Consumer Servs., Inc., 543 F.Supp. 1071, 1073 (E.D. Pa. 1982).

 In contrast to New Jersey, other states have adopted the time limitations that Congress placed on the U.S. Attorney General's CID power by including such restrictions in their own state statutes. See, e.g., Ga. Code Ann. § 23-3-125(b)(1) (2017) (limiting Georgia Attorney General’s power to issue CID to time period before commencing civil action or making election to intervene); 740 Ill. Comp. Stat. 17576(a)(1) (2017) (same); Mass. Gen. Laws ch. 12, § 5N(1) (2017) (same).

 Accord TracFone Wireless, Inc. v. Comm'n on State Emergency Commc’ns, 397 S.W.3d 173, 181 (Tex. 2013) (“But the specific-over-general canon applies only when two statutory provisions are irreconcilable."); Wik v. Wik, 681 P.2d 336, 340 (Alaska 1984) (“The rule ... is that a statute dealing with specific subject matter in a detailed way prevails over a more general statute only if the two statutes cannot be harmonized.").

 Furthermore, the federal corollary to 5(g), 31 U.S.C.A. § 3730(b)(4), is almost identical, yet Congress placed the temporal limit on the U.S. Attorney General’s *298 subpoena power in 31 U.S.C.A. § 3733(a)(1). See supra Part II.A. This illustrates that the U.S. Attorney General's subpoena power is limited by the federal False Claims Act’s subpoena provision, not its intervention provision. Consequently, the majority's scrutiny of the NJFCA’s intervention provision, section 5(g), for a time constraint on the Attorney General’s subpoena power is an inapt endeavor; the more natural place for such a limit would be in the statute’s subpoena provision, N.J.S.A. 2A:32C-14.