LOUIS SOTOMAYOR, PLAINTIFF–RESPONDENT, AND CHRISTIAN CARVAJAL, BY HIS GUARDIAN AD LITEM, CECILIA FLORES, AND CECILIA FLORES, INDIVIDUALLY, PLAINTIFFS, v. FERNANDO VASQUEZ, JOSE MARIN, JULIO FREIJO, AND THE CHUBB GROUP OF INSURANCE COMPANIES, JOINTLY, SEVERALLY, AND/OR IN THE ALTERNATIVE, DEFENDANTS, AND UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, DEFENDANT–RESPONDENT, AND THE AETNA CASUALTY AND SURETY COMPANY, DEFENDANT–APPELLANT.

Argued September 15, 1987—Decided January 26, 1988.

*Victor C. Harwood, III,* argued the cause for appellant (*Harwood Lloyd,* attorneys).

*Mark I. Feiner* argued the cause for respondent Louis Sotomayor (*Greenberg, Feiner, Wallerstein & Benisch,* attorneys).

*Frank P. Addas* argued the cause for respondent Unsatisfied Claim and Judgment Fund Board (*James & Addas,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

This is a PIP case. PIP is an acronym for personal injury protection benefits, a form of compulsory auto insurance required by the New Jersey Automobile Reparation Reform Act, *L.* 1972, *c.* 70 ("No–Fault" Law), *N.J.S.A.* 39:6A–4. This case

concerns the scope of the coverage afforded under a standard New Jersey automobile policy. We do not intend this opinion, or *Wilson v. Unsatisfied Claim & Judgment Fund Bd.*, 109 *N.J.* 271 (1988), also decided today, to be a treatise on PIP law. We must of necessity refer to various issues that are peripheral to the central issues that we shall decide. We refer to such secondary issues only as background to the matters before us and we shall use terms of convenience, not of art, such as "family" in lieu of "household," to simplify statutory references.

I

■ At the outset, we note also that our "No–Fault" Law is premised on certain underlying assumptions: namely, that most automobile accidents involve private passenger cars, and that most households will own a car. Thus, compulsory automobile insurance providing basic PIP benefits for the occupants of each car and the members of each car owner's family is designed to provide quick and easy reimbursement for the basic personal costs most people incur when they are involved in an automobile accident. Usually, the benefits payable under PIP law are the familiar common-law special damages for "bodily injury," such as medical expenses and lost income. PIP's strategic goal is to counter, by early payment of bills without regard to a driver's fault, the increasing spiral of automobile negligence cases that were thought to have been a major cause of rising auto insurance premiums in New Jersey, as well as much of the congestion in the court system.

■ Expressed symbolically, the basic scheme of PIP is that each car in personal use should take care of its passengers and that each family car should take care of that family. The relevant language of the statute creating those two tiers is as follows:

Every automobile liability insurance policy [providing liability insurance] * * * shall provide personal injury protection coverage (PIP) * * * for the payment of benefits without regard to negligence, liability or fault of any kind

(1) TO THE NAMED INSURED and MEMBERS OF HIS FAMILY residing in his household who sustained bodily injury as a result of an accident while

(a) occupying, entering into, alighting from or using an *automobile,*

(2) TO OTHER PERSONS sustaining bodily injury while

(a) occupying, entering into, alighting from or using *the automobile of the named insured,* with the permission of the named insured \* \* \*. [*N.J.S.A.* 39:6A–4 (emphasis added).] [1]

We can see how this system functions by examining a typical two-car accident involving two families out for a Sunday drive with two respective parents, A and B, driving their respective family cars. We realize that this discussion may appear overly simplistic to those familiar with PIP, but we believe that these examples may be helpful to the reader. Assume that each car carries a parent, child, and two unrelated passengers, and that following the accident, all eight occupants are taken to the hospital, where they all incur medical expenses. In the anticipated situation of two insured cars, each of the occupants of Car A would be covered for all necessary medical treatment by Car A's PIP insurance company. Similarly, Car B's occupants would be covered by Car B's PIP carrier.[2]

But what if Car B were uninsured? Assume for example that, through a technicality, Car B's PIP coverage had lapsed, but that B had another car at home. The PIP carrier for B's

---

[1]For ease of analysis, we have added numeration, emphasis and paragraphing and omitted the statute's handling of pedestrian injuries from our recital of the statute's terms. We note, however, the statute's relevant distinction: the insured and his family as pedestrians may recover from the family policy; other pedestrians recover from the policy of the car that struck them. *N.J.S.A.* 39:6A–4; *see Selected Risks Ins. Co. v. Allstate Ins. Co.,* 179 *N.J.Super.* 444, 448 (App.Div.), *certif. denied,* 88 *N.J.* 489 (1981) (citing M. Iavicoli, *No Fault & Comparative Negligence in New Jersey* 25 (1973)).

[2]Prior to 1983, the passengers in Cars A and B had two sources of recovery; the policy covering the occupied car and any family policy. A 1983 amendment now stipulates that the named insured's policy will provide primary coverage for the policyholder and "any resident relative in the named insured's household who is not a named insured under an automobile insurance policy of his own." The occupied car's policy will be secondary. *See L.* 1983, *c.* 362, § 12, *N.J.S.A.* 39:6A–4.2.

other family car would then provide coverage for B and B's child. B's passengers, call them P1 and P2, could also look to their own family car policies for coverage if they had cars.

■ But what if P1 and P2 or their families owned no cars? The Unsatisfied Claim and Judgment Fund, *N.J.S.A.* 39:6–61 to 6–91, provides limited backup indemnity for the victim of an accident caused by an uninsured motorist. Established under *N.J.S.A.* 39:6–86.1 and administered by the Unsatisfied Claim and Judgment Fund Board, this counterpart backup fund provides PIP benefits to the eligible victim of an accident involving an uninsured car. We shall discuss the provisions of that law in detail in *Wilson v. Unsatisfied Claim and Judgment Fund Bd., supra,* also decided today.

This case presents one additional wrinkle to the examples that we have provided. To continue the discussion, assume that P1 and B exchange places and P1 is driving B's car, which is uninsured for PIP. Assume further that P1 has an insured family car. Of course, P1 has his bills paid by his family car policy, but can P2, who has no family car PIP coverage, recover from P1's PIP carrier?

That is the basic issue in this case, which is made more complex by the fact that Car B is owned by a New Yorker and is registered in New York. We hold that P1's PIP carrier is not required by *N.J.S.A.* 39:6A–4 to afford PIP coverage to P2, the other passenger in B's uninsured car.

II

The facts of this case are as follows: On March 29, 1981, plaintiff Sotomayor was involved in a two-car accident in New Jersey while riding as a passenger in an uninsured New York vehicle that was driven by Fernando Vasquez, Aetna's insured. (Vasquez owned a car registered in New Jersey. He had recently moved to Virginia but that fact plays no part in the resolution of these issues.) The other automobile involved in the accident was a New Jersey-insured car. As a result of the

accident, plaintiff suffered serious injuries. The liability aspects of the accident were settled by agreement between the insurance carriers of the respective drivers. Each carrier paid its policy limits on the bodily injury claim. Plaintiff then brought this action seeking PIP benefits from Aetna under the Vasquez policy, or, alternatively, PIP benefits from the UCJF. Aetna denied coverage, contending that, as the car was not owned by Vasquez, the accident did not involve an "automobile of the named insured" within the meaning of *N.J.S.A.* 39:6A–4. The trial court, however, granted Sotomayor's motion for summary judgment against Aetna, entered a judgment for $77,000 against the carrier, and granted the Unsatisfied Claim and Judgment Fund Board's motion for summary judgment. This amount represented Sotomayor's medical expenses.

Aetna appealed the Law Division's order finding PIP coverage. Plaintiff Sotomayor filed a protective cross-appeal from the dismissal of his PIP claim against the Fund in the event his PIP judgment against Aetna was reversed. On appeal, the Appellate Division affirmed, reasoning that "[t]here is nothing in [*N.J.S.A.* 39:6A–4] to suggest the automobile must be owned by the insured. To engrave a condition of ownership on the statute would restrict the coverage, narrow the protection afforded and defeat the ordinary expectations of the policyholder." *Sotomayor v. Vasquez,* 213 *N.J.Super.* 414, 418 (1986). For procedural reasons,[3] this Court granted Aetna's request for review on January 28, 1987, treating it as a motion for leave to appeal. 107 *N.J.* 88 (1987). Plaintiff's cross-petition for certification against the defendant Unsatisfied Claim and Judgment Fund Board was never acted upon because the Court elected to consider this matter as a motion for leave to appeal.

---

[3]Aetna's appeal was interlocutory because of the open claims of one of the passengers. Consequently, the Appellate Division granted leave to appeal *nunc pro tunc. Sotomayor v. Vasquez,* 213 *N.J.Super.* 414, 417 n. 1 (1986).

### III

### A.

Preliminarily, we shall address three supplementary arguments that the parties advanced in addition to their central arguments on the scope of statutory PIP coverage.

 Plaintiff argues that the PIP coverage endorsement merely modifies rather than supplements the medical payments coverage provision of the Aetna policy issued to Vasquez. Under that coverage (to be discussed in Part V hereof, *infra* at 269–270), defined medical expenses are payable to any "person who sustains bodily injury * * * while occupying a non-owned automobile" operated or occupied, with the owner's permission, by the named insured or by a relative. Therefore, Sotomayor argues that since the vehicle involved in the accident was a "non-owned" automobile, he should qualify for the medical payment coverage. PIP, however, is an entirely new and different form of coverage. The addition of a PIP endorsement cannot be read to convert the prior limited medical payment coverage for a broader class of beneficiaries to an unlimited coverage for that same class.

The Fund argues that the literal language of the PIP endorsement is controlling, and that Aetna, rather than the Fund, should be liable. Since the endorsement defines "eligible injured person" to include an occupant of the "insured automobile," and since Aetna insured the automobile (at least for liability coverage), Sotomayor should be covered by the Aetna policy. But, as the Fund recognizes, the same endorsement defined "insured automobile" as "an automobile with respect to which the named insured is *required to maintain* liability insurance coverage under the New Jersey Automobile Reparation Reform Act." (emphasis added). Vasquez was "required to maintain" insurance only on his own car.

Finally, defendant Aetna emphasizes that the PIP provisions defining "automobile of the named insured" are limited to

automobiles owned or leased by the named insured, and are therefore not applicable to a borrowed automobile. However, under *N.J.S.A.* 39:6A–2a automobile is defined to mean "a private passenger automobile of a private passenger * * * that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others * * *." In this context, defendant's argument may reach too far: if it were carried to its logical extreme, an insured's family could arguably be prohibited from recovering PIP benefits when injured while occupying "an automobile" that was borrowed.

We find none of these arguments persuasive or controlling. Rather, we believe the answer must be found in the PIP statute itself, *N.J.S.A.* 39:6A–4.

### B.

As noted, we believe that the correct view of the PIP statute is that coverage is not mandated in this situation. As our series of examples illustrates, the Legislature has created a two-tiered system of PIP coverage. The second tier covers "other persons" not in the family, such as Sotomayor, "while [they are] occupying * * * *the automobile of the named insured.*" *N.J.S.A.* 39:6A–4 (emphasis added).

The question is whether the words "automobile of the named insured" refer to *any* vehicle the named insured may be driving. The Appellate Division concluded that "[t]here is nothing in *N.J.S.A.* 39:6A–4 to suggest that the automobile must be owned by the insured." *Sotomayor v. Vasquez, supra,* 213 *N.J.Super.* at 418. We disagree because we believe that their interpretation conflicts with the plain language of the Act, creates internal inconsistencies within the Act, and fails to recognize the Legislature's evident policy choice of a two-tiered benefit system.

Courts have consistently recognized the two-tiered nature of PIP coverage in that the named insured and members of the insured's family residing in the same household are

afforded broader coverage under the "No–Fault" Law than are other persons. *Selected Risks Ins. Co. v. Allstate Ins. Co.*, 179 *N.J.Super.* 444, 448 (App.Div.), *certif. denied*, 88 *N.J.* 489 (1981); *See also Clendaniel v. New Jersey Mfrs. Ins. Co.*, 96 *N.J.* 361, 368 (1984) (it was natural for Legislature to assume that policyholder would want to afford greater benefits to family than to strangers). As the Court noted in *Selected Risks Ins. Co., supra*, "*N.J.S.A.* 39:6A–4 evidences a clear legislative intent to provide coverage to [the named insured and members of his family residing in his household] when they sustain injury as a result of *any accident involving an automobile.*" 179 *N.J.Super.* at 448 (emphasis added). But when defining the extent of coverage provided to "other persons" [occupants and pedestrians], the Legislature qualified the term "automobile" in *N.J.S.A.* 39:6A–4 by the words "of the named insured." To permit "other persons" to recover PIP benefits from a named insured who did not own the car he was driving would contradict the express language of *N.J.S.A.* 39:6A–4 and the two-tiered nature of PIP coverage. We are urged that this result does not reflect the "broadest application consistent with" the policy of the "No–Fault" Law, *Amiano v. Ohio Casualty Ins. Co.*, 85 *N.J.* 85, 90 (1981), but there are limits to what courts can do with the plain language of a statute. *IMO Schedule of Rates for Barnert Memorial Hosp.*, 92 *N.J.* 31, 40 (1983). Our holding that PIP coverage extends only to claimants having eligible status vis-a-vis the vehicle owned or leased by the named insured flows from the plain language of *N.J.S.A.* 39:6A–4. Mario A. Iavicoli, former Counsel to the New Jersey Automobile Insurance Study Commission, notes how the language of the statutes makes this distinction in coverage in his treatise, *No Fault and Comparative Negligence in New Jersey* 23–28 (1973) [hereinafter Iavicoli].

In separate sections of Chapter Two of his work, he sets forth the differing coverages for "Named Insured and Family" and "Occupants and Pedestrians." For the former class, the policy follows the family; for the latter, the policy follows the

insured's automobile. He underscores the fact that under *N.J.S.A.* 39:6A–4, PIP "coverage is extended to the named insured and relatives within the household if the bodily injuries are received as a result of *any* automobile accident." Iavicoli, *supra*, at 25 (emphasis in original).

In contrast, he notes how other persons' benefits depend upon their status vis-a-vis the automobile of the insured. "All occupants of the named insured's automobile are covered by the insurer of the named insured for personal injury protection benefits. This applies even if the automobile is being operated [with permission] by someone other than the named insured." Iavicoli, *supra*, at 28 (footnote omitted). "[T]he automobile" that Iavicoli refers to must be the automobile owned by the insured; else why discuss its operations by others? *Id.* at 28.[4]

In sum, under our "No–Fault" system each car's PIP policy is responsible both for the car's passengers and for the family of its owner. Sotomayor, who was neither a passenger in the Vasquez car insured with Aetna nor a member of the Vasquez family covered by the Aetna policy, must look to the host car or to its backup through the Fund for PIP protection. We respect the concern for one such as Sotomayor who may be seen as "slipping between the cracks" of the system, but the

---

[4]Similarly, in *Pennsylvania Mfrs. Ass'n Ins. Co. v. Government Employees Ins. Co.*, 136 *N.J.Super.* 491 (1975), *aff'd*, 72 *N.J.* 348 (1977), the Appellate Division held that under *N.J.S.A.* 39:6A–4, PIP coverage extends only to the claimants having eligible status vis-a-vis the vehicle owned by the named insured. In that case, a non-family passenger in an automobile was injured in a collision with a negligent third party. The passenger qualified for the PIP benefits available through the insurance carrier of the owner and driver of the vehicle that he was riding in. (See our example at 262). The host car's carrier brought a common-law subrogation action against the PIP carrier of the negligent third-party motorist. The court held that the injured passenger had no eligible status vis-a-vis the negligent motorist or his vehicle and therefore had no PIP claim against the negligent motorist's carrier; hence, subrogation was not available. *N.J.S.A.* 39:6A–9, granting limited statutory subrogation rights by inter-company agreement or arbitration, became inoperative after December 31, 1974. *See Cirelli v. Ohio Casualty Ins. Co.*, 72 *N.J.* 380, 385 (1977).

Legislature had to balance varied interests in developing a system that would provide a high measure of protection in most eventualities. And as we shall see, Sotomayor has not yet slipped through the cracks.

## IV

Although we did not grant Sotomayor's petition for certification, we now address his cross-motion for PIP payments from the Unsatisfied Claim and Judgment Fund under the uninsured motorist amendments to the Unsatisfied Claim and Judgment Fund Law, *N.J.S.A.* 39:6–86.1. The Fund argues that there can be no recovery from the Fund because the Aetna policy provided *liability* insurance coverage for the accident thereby entitling Sotomayor to a common-law right of recovery against Vasquez.[5] In *Wilson v. Unsatisfied Claim & Judgment Fund Bd., supra,* 109 *N.J.* at 276, also decided today, we explain the meaning of *N.J.S.A.* 39:6–86.1. However, because there are multiple factual issues to be resolved before a determination of eligibility can be made, we shall not decide Sotomayor's cross-motion. For example, there is a dispute over whether the vehicle was "physically garaged" in New Jersey, and was thus qualified as a vehicle that should have been insured under New Jersey law. *N.J.S.A.* 39:6–86.1. Suffice it to observe that the availability of a third-party liability action will not in and of itself defeat a claim for PIP benefits from the Fund.

## V

The final issue that appears before us is whether there are medical benefits available to Sotomayor under Aetna's Standard Family Automobile Policy coverage, and, if there are,

---

[5]Under the liability provision of Vasquez's policy, Aetna agreed to pay "bodily injury" damages "arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile * * *."

whether the availability of such benefits will have any impact upon the Fund's liability.

Medical payment benefits are a form of contractual medical reimbursement that existed prior to the "No–Fault" system. Under its form of Standard Family Automobile Policy coverage, Aetna contractually agreed to pay, up to $10,000, all reasonable medical expenses incurred within one year from the date of the accident. This coverage amount apparently extended to any "other person" occupying a "non-owned" automobile operated by the insured. When the PIP statute was enacted, Aetna simply attached a PIP endorsement to its policy, stating that it was affording the statutory PIP coverage required by *N.J.S.A.* 39:6A–4. The medical payment provisions of the Aetna policy also remained effective.

Medical payment coverage differs from PIP in that medical payment benefits are specifically limited with respect to terms of coverage and period of eligibility. Conversely, under PIP the insurer must pay all reasonable personal injury expenses arising from the accident. Aetna acknowledges that it may have a medical payment liability but argues that it does not have an unlimited "PIP-type" liability. This aspect of the case may serve to reduce the amount due from the Fund.

On the record before us, then, we do not resolve the question of the availability or the extent of medical payment coverage in this case. We would leave it to the Fund to assert its availability by way of defense to a claim for PIP benefits or to seek subrogation thereto if plaintiff is found to be otherwise eligible.

Accordingly, the judgment of the Appellate Division is reversed and the cause remanded.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.