862 A.2d 568 (2004)
373 N.J. Super. 494
Carmen RIVERA, Plaintiff-Respondent,
v.
Luis M. MORALES, Toyota Motor Credit Corp., Alicia Munoz, Bank of America, Defendants, and
Liberty Mutual Insurance Company, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 16, 2004.
Decided December 17, 2004.
*569 Kramkowski Fabricant & Bressler, for appellant (Anthony F. Belotta, on the brief).
Larry S. Geller, Maplewood, for respondent (Mr. Geller, on the brief).
Before Judges STERN, S.L. REISNER and GRAVES.
The opinion of the court was delivered by
S.L. REISNER, J.A.D.
This case presents the issue whether the $100 per week personal injury protection (PIP) income continuation benefit payable, pursuant to N.J.S.A. 39:6A-4(b), to a temporarily disabled automobile accident victim, must be reduced by the amount of State temporary disability benefits she receives during the period of disability. We hold that the disability benefits must be deducted from the PIP income continuation benefit, pursuant to the collateral source rule set forth in N.J.S.A. 39:6A-6. Accordingly, we reverse the order of the trial court, which awarded plaintiff Carmen Rivera (Rivera) the $100 weekly benefit without deducting the temporary disability benefits she received.

I
Rivera was injured in an automobile accident on January 29, 2002. She lost twenty-nine weeks of work due to her injuries. She received State temporary disability benefits of $444 each week, but this amount was less than her weekly salary of $700. Since she still had a net loss of income, she sought income continuation benefits under the PIP portion of her policy with Liberty Mutual Insurance Company (Liberty Mutual). Her claim was denied, and she filed suit to recover the $100 per week benefit.
Liberty Mutual filed a motion for summary judgment to dismiss plaintiff's complaint. The trial court denied the motion, concluding that Rivera was entitled to the benefits because, even after receiving disability benefits, she had a net loss of income. The court rejected Liberty Mutual's argument that N.J.S.A. 39:6A-6 required that Rivera's disability benefits be deducted from her income continuation benefit. The court awarded Rivera income continuation benefits in the amount of $100 per week for the twenty-nine week period *570 of disability pursuant to N.J.S.A. 39:6A-4(b).

II
Liberty Mutual contends that the collateral source rule, N.J.S.A. 39:6A-6, applies to plaintiff's receipt of income continuation benefits under N.J.S.A. 39:6A-4(b), and hence the $444 plaintiff received in State temporary disability benefits must be deducted from the PIP benefits, leaving a negative dollar amount and entitling plaintiff to nothing. We agree.
The Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-4, provides for personal injury protection (PIP) coverage, regardless of fault.[1] PIP coverage includes income continuation benefits. The basic income continuation benefit consists of
[t]he payment of the loss of income of an income producer as a result of bodily injury disability, subject to a maximum weekly payment of $100. Such sum shall be payable during the life of the injured person and shall be subject to an amount or limit of $5,200, on account of injury to any one person in any one accident, except that in no case shall income continuation benefits exceed the net income normally earned during the period in which the benefits are payable.
[N.J.S.A. 39:6A-4(b).]
An insured has the option of purchasing income continuation benefits, in excess of the $100 per week basic benefit, by paying an additional premium. N.J.S.A. 39:6A-10. Income continuation benefits payable under section four or section ten are to be made available to the injured accident victim "as [the] loss accrues," N.J.S.A. 39:6A-6, without regard to fault, so that at least some of the victim's lost income is immediately replaced. Sotomayor v. Vasquez, 109 N.J. 258, 261, 536 A.2d 746, 747 (1988).
However, when the injured victim actually receives benefits from certain "collateral sources" such as State temporary disability benefits, those benefits must be deducted from, or offset against, the PIP income continuation benefits.
The benefits provided in [N.J.S.A. 39:6A-4 and N.J.S.A. 39:6A-10], ... shall be payable as loss accrues, upon written notice of such loss and without regard to collateral sources, except that benefits, collectible under workers' compensation insurance, employees' temporary disability benefit statutes, Medicare provided under federal law, and benefits, in fact collected, that are provided under federal law to active and retired military personnel shall be deducted from the benefits collectible under ... [N.J.S.A. 39:6A-4 and N.J.S.A. 39:6A-10] ....
[N.J.S.A. 39:6A-6 (emphasis added).]
Thus, section six contains an unambiguous requirement that the $100 PIP income continuation benefit must be reduced by the amount of any temporary disability benefits the insured receives. See Tillman v. Allstate Ins. Co., 154 N.J.Super. 206, 209-11, 381 A.2d 74, 75-76 (Ch.Div.1977). Any doubt concerning this construction is resolved by the second paragraph of section six, which provides that if the insured is entitled to temporary disability benefits, but does not apply for them, the PIP carrier may apply for those benefits on behalf of the insured in order *571 to obtain reimbursement for income continuation benefits paid to the insured:
If an insurer has paid those benefits and the insured is entitled to, but has failed to apply for, ... employees' temporary disability benefits, the insurer may immediately apply to the provider of ... employees' temporary disability benefits for a reimbursement of any benefits pursuant to [N.J.S.A. 39:6A-4 or N.J.S.A. 39:6A-10] it has paid.
[N.J.S.A. 39:6A-6.]
On appeal, as in the trial court, Rivera contends that she was entitled to collect the $100 income continuation benefit as long as she had a net loss of income. She contends that, since she normally earned $700 per week, and only collected $444 per week in temporary disability benefits, she still had a net loss of income and could collect the PIP benefit to offset that loss. We conclude that this argument is precluded by the unambiguous wording of the PIP statute. As we observed in another case involving income continuation benefits, "[w]hen we think the statutory language is clear, we must apply it as written, not inject some lurking judicial suspicion that a better policy could or should be engrafted on the statutory scheme." O'Boyle, supra, 241 N.J.Super. at 509, 575 A.2d at 518; see also Tillman, supra, 154 N.J.Super. at 210, 381 A.2d at 76.
In O'Boyle, supra, 241 N.J.Super. at 507-08, 575 A.2d at 517, we reviewed at some length the history of the income continuation benefit statute and concluded that the "purpose of the collateral source deduction was to prevent double recovery of benefits by accidental victims of personal injury to the extent that these benefits were mandated otherwise by law." Id. at 508, 575 A.2d at 517. As explained by Mario Iavicoli in his treatise on the no fault law:
The Automobile Insurance Study Commission had good reason to recommend the workmen's compensation, temporary disability benefits, and medicare deductions. One must begin with the basic concept that the duplication of benefit payments for the same out-of-pocket expense satisfies no justifiable purpose. Therefore, by creating the above deductions, the purchaser of automobile insurance coverage enjoys a premium savings, while similar coverage from another source is in effect
....
One must not discount the fact that the ... temporary disability benefits ... deductions have contributed to the insurance premium reduction mandated by the Act."
[Iavicoli, No Fault & Comparative Negligence in New Jersey (1973), § 19, at 55-56.]
Rivera contends that she is not seeking a "double recovery," because she still has a net income loss even after receipt of temporary disability benefits. However, we conclude that the "double recovery" referenced in Iavicoli, supra, is not the recovery of an amount equivalent to an employee's entire wage but rather the amount equivalent to the temporary disability benefit to which the employee is entitled. In passing the collateral source rule, the Legislature intended to reduce insurance premiums by making certain state-mandated benefits, such as temporary disability and workers' compensation, rather than PIP insurance benefits, the primary source of income-replacement for injured insureds. See Olivero v. N.J. Mftrs. Ins. Co., 227 N.J.Super. 367, 380, 547 A.2d 710, 716-17 (App.Div.1988), certif. denied, 115 N.J. 76, 556 A.2d 1219 (1989).
This scheme does not render the PIP benefit worthless. PIP income continuation benefits are to be paid immediately *572 without the need for determination of fault or other time-consuming litigation. Hence, the insurance carrier must pay the benefit regardless of whether the insured may eventually be entitled to benefits from collateral sources. See Aetna Cas. & Sur. Co. v. Para Mfg. Co., 176 N.J.Super. 532, 534, 424 A.2d 423, 424 (App.Div.1980); Frazier v. Liberty Mut. Ins. Co., 150 N.J.Super. 123, 140, 374 A.2d 1259, 1268 (Law Div.1977). However, once the temporary disability or workers' compensation benefits are paid, the PIP carrier must be reimbursed. The employee may not keep both the PIP benefit and the temporary disability benefit, except to the extent that the latter is less than the former. See Olivero, supra, 227 N.J.Super. at 382, 547 A.2d at 717-18; Wagner v. Transamerica Ins. Co., 167 N.J.Super. 25, 34, 400 A.2d 497, 501 (App.Div.), certif. denied, 81 N.J. 60, 404 A.2d 1159 (1979).
If the disability lasts beyond the period of eligibility for temporary disability benefits, the employee may then collect PIP income continuation benefits for the remaining period of disability, up to the maximum amount permitted by the PIP statute. See Olivero, supra, 227 N.J.Super. at 382, 547 A.2d at 717-18; Smith v. Allstate Ins. Co., 203 N.J.Super. 610, 616, 497 A.2d 602, 605-06 (Law Div.1985). In this case, had Rivera been out of work long enough to exhaust her temporary disability benefits, she could, at that point, have qualified for the $100 weekly PIP benefit.
Reversed.
NOTES
[1] AICRA, which amended the existing "no fault" automobile insurance scheme, took effect after the accident at issue in this case. However, AICRA did not alter the provisions of the PIP statute applicable to this case. Those provisions have been part of the statute since 1973. See O'Boyle v. Prudential Ins. Co. of Am., 241 N.J.Super. 503, 507, 575 A.2d 515, 517 (App.Div.1990).