**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3119-17T4

MARIA NAPOLITANO,

     Plaintiff-Respondent,

v.

MSS VENDING, INC., and
TONY HUDSON,

     Defendants-Appellants,

and

GIUSEPPE NAPOLITANO,

     Defendant-Respondent.

_____

Argued September 10, 2019 – Decided November 7, 2019

Before Judges Messano, Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket Nos. L-5330-14 and L-3916-14.

Jeffrey John Czuba argued the cause for appellants (Hoagland Longo Moran Dunst & Doukas, attorneys; Jeffrey John Czuba, of counsel and on the briefs).

Nicholas P. Scutari argued the cause for respondent Maria Napolitano (Nicholas P. Scutari and Fruhschein & Steward, LLC, attorneys; Nicholas P. Scutari, of counsel and on the briefs; Carleen M. Steward, on the brief).

Eric G. Kahn argued the cause for amicus curiae New Jersey Association for Justice (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, attorneys; Eric G. Kahn and Annabelle Moskol Steinhacker, of counsel and on the brief).

Stephen Jospeh Foley, Jr. argued the cause for amicus curiae New Jersey Defense Association (Campbell Foley Delano & Adams, LLC, attorneys; Stephen Joseph Foley, Jr., on the brief).

PER CURIAM

Plaintiff Maria Napolitano was a passenger in a car driven by her father, Giuseppe Napolitano, when it was struck in the rear by a truck driven by defendant Tony Hudson and owned by MSS Vending, Inc. Defendant claimed that after stopping partially in an intersection for a red light, Giuseppe Napolitano placed his car in reverse and backed into defendant's vehicle.[1] Plaintiff sought damages for pain and suffering based on alleged injuries to her knees, shoulders, and spine. Additionally, plaintiff was insured under a standard automobile insurance policy that included a $50,000 limit for personal injury

---

[1] Giuseppe Napolitano settled his claims against defendant but remained a defendant at trial on his daughter's complaint.

A-3119-17T4

protection (PIP) benefits. Plaintiff also sought more than $765,000 in medical expenses that allegedly exceeded policy limits.

Following the close of discovery, defendant moved to bar plaintiff's medical expense claim, asserting she failed to identify any witness who possessed expertise or training in evaluating medical bills and who was competent to testify as to their reasonableness. Defendant further argued that the PIP fee schedule adopted by the Department of Banking and Insurance (DOBI) should be applied to all medical bills, and any recovery should be limited to the fee schedule amounts for services provided. Although the motion was opposed, and defendant sought oral argument, the judge denied the motion without granting argument or issuing any written or oral decision.

Defendant moved for reconsideration, plaintiff filed opposition, and defendant again requested oral argument. The judge denied the motion without argument and, in a brief written statement of reasons, concluded defendant failed to establish any grounds for reconsideration. Relying on our decision in Haines v. Taft, 450 N.J. Super. 295 (App. Div. 2017), the judge wrote plaintiff's "medical expenses exceeding PIP limits were not inadmissible under N.J.S.A. 39:6A-12."

A-3119-17T4

The parties took the de bene esse deposition of Dr. Matthew Garfinkel, a board-certified orthopedic surgeon, who operated on both of plaintiff's knees and both of her shoulders. Plaintiff's counsel questioned Dr. Garfinkel about the medical bills associated with his treatment, and defense counsel objected, noting the bills contained amounts for the anesthesiologist and use of the surgical facility. Immediately before trial, defendant moved in limine to exclude those portions of Dr. Garfinkel's testimony regarding the medical bills. The trial judge, who was not the pre-trial motion judge, denied defendant's request.

In addition to her own testimony and Dr. Garfinkel's videotaped deposition, plaintiff produced the expert testimony of Dr. Paresh Rijsinghani, a radiologist; Dr. Michael Robinson, a chiropractor; Dr. Wayne Fleischhacker, a board-certified anesthesiologist and pain management specialist; and Dr. Marc Cohen, a board-certified spine surgeon. Defendant testified and also offered the videotaped deposition of Dr. Steven Fried, an orthopedic doctor.[2]

The jury concluded defendant was negligent, Giuseppe Napolitano was not, and defendant's negligence was a proximate cause of the accident. It

_____

[2] We have not been furnished with a copy of Dr. Fried's testimony, but we gather from defense counsel's closing argument that Dr. Fried opined plaintiff's injuries were pre-existing and not aggravated by this accident, or degenerative in nature. The judge ultimately ruled Mr. Napolitano was "unavailable" and the parties read portions of his deposition testimony for the jury.

awarded plaintiff $75,000 in damages for pain, suffering and loss of enjoyment of life, and $383,000 for unpaid medical expenses, half the amount plaintiff claimed. Defendant moved for a new trial, which the judge denied. This appeal followed.

## I.

Defendant argues that the judge's failure to grant oral argument on his motion to bar plaintiff's claim for medical expenses, and the judge's failure to provide a statement of reasons for her decision, requires reversal. Defendant also contends that the actual testimony adduced at trial on the claim for medical expenses was incompetent because it lacked "a [p]roper [f]oundation" and was supported by only "[n]et [o]pinions[.]" As a corollary, defendant argues DOBI's fee schedule provided a "[c]onclusive [r]easonableness [m]ethodology[,]" and the trial court erred by refusing to limit plaintiff's claim to the amounts payable to providers pursuant to the fee schedule. Lastly, defendant contends the judge's decision to tell the jury defendant was insured was prejudicial and requires reversal. We permitted the New Jersey Association for Justice (NJAJ) and the New Jersey Defense Association (NJDA) to appear as amici curiae.

While the appeal was pending, the Court issued its decision in Haines v. Taft, 237 N.J. 271 (2019). At the time, N.J.S.A. 39:6A-12 provided in relevant

5

part:  "Nothing in this section shall be construed to limit the right of recovery, against the tortfeasor, of uncompensated economic loss sustained by the injured party."  "Economic loss" was and remains defined as "uncompensated loss of income or property, or other uncompensated expenses, including, but not limited to, medical expenses."  N.J.S.A. 39:6A-2(k) (emphasis added).  In reversing our earlier judgment, the Court held that "interpreting [N.J.S.A. 39:6A-12] to allow the admission of evidence of medical expenses falling between the insured's PIP policy limit and the $250,000 PIP statutory ceiling transgresses the overall legislative design of the No-Fault Law to 'reduc[e] court congestion[,] . . . lower[] the cost of automobile insurance[,]' and most importantly, avoid fault-based suits in a no-fault system[.]"  Id. at 292 (first four alterations in original) (citing Roig v. Kelsey, 135 N.J. 500, 516 (1994)).  We asked the parties to address the impact of the Court's holding on the issues in this case.

The landscape shifted again before we heard oral argument.  The Legislature passed, and the Governor signed, Senate Bill No. 2432 on August 15, 2019, which took effect immediately and "appl[ied] to causes of action pending on that date or filed on or after that date."  L. 2019, c. 244 § 2 (Chapter 244).  Chapter 244 was a direct response to the Court's decision in Haines, and amended N.J.S.A. 39:6A-12 by providing:

Nothing in this section shall be construed to limit the right of recovery, against the tortfeasor, of uncompensated economic loss as defined by [N.J.S.A. 39:6A-2(k)], <u>including all uncompensated medical expenses not covered by the personal injury protection limits applicable to the injured party and sustained by the injured party. All medical expenses that exceed, or are unpaid or uncovered by any injured party's medical expense benefits [PIP] limits, regardless of any health insurance coverage, are claimable by any injured party as against all liable parties, including any self-funded health care plans that assert valid liens</u>.

[<u>L.</u> 2019, <u>c.</u> 244, § 1 (emphasis added).]

On the same day, the Legislature passed, and the Governor signed, Senate Bill No. 3963, <u>L.</u> 2019, <u>c.</u> 245 (Chapter 245), with an effective date of August 1, 2019. Chapter 245 amended N.J.S.A. 39:6A-4.6(a), by requiring DOBI to "promulgate medical fee schedules . . . for the reimbursement of health care providers . . . for payment of unreimbursed medical expenses that are admissible as uncompensated economic loss pursuant to [N.J.S.A. 39:6A-12]." <u>L.</u> 2019, <u>c.</u> 245 § 1. In relevant part, Chapter 245 also further amended N.J.S.A. 39:6A-12 by subjecting any claim for "unreimbursed medical expenses[,]" as opposed to uncompensated medical expenses, "not covered by the [PIP] limits applicable to the injured party and sustained by the injured party, including the value of any deductibles and copayments incurred through a driver's secondary insurance coverage and medical liens asserted by a health insurance company related to

the treatment of injuries sustained in the accident . . . to the current automobile medical fee schedules established pursuant to [N.J.S.A. 39:6A-4.6]." Id. at § 2. Chapter 245 applies to all automobile accidents that occurred on or after August 1, 2019. Id. at § 3.

At oral argument, defendant clarified that he was not relying on the Court's decision in Haines, and he, along with NJDA, agreed with plaintiff and NJAJ that Chapter 244 applies, since this action was "pending" direct appeal on August 15, 2019. The parties and amici also do not dispute that by its terms Chapter 245 does not apply, since the accident occurred before August 1, 2019.

Defendant, however, reiterates his primary arguments that the motion judge's failure to provide oral argument and adequate reasons for denying his pre-trial attempt to bar plaintiff's claim for medical expenses requires reversal, plaintiff's evidence of unpaid medical expenses was premised on the inadmissible net opinions of the various treating doctors and their unauthenticated billings, and DOBI's fee schedule is essentially presumptive evidence of reasonableness. NJDA frames the issue as whether the trial testimony, which essentially permitted the doctors to state the gross amount of their bills, permitted plaintiff to mischaracterize the bills as "unpaid," when in

fact there may have been payments made to, and accepted by, those providers by plaintiff's PIP insurer or some other insurer.

Initially, we do not condone the motion judge's failure to accord defendant oral argument, or her entry of an order devoid of any written or oral statement of reasons. Rule 1:6-2(d) grants oral argument "as of right" for all civil motions except those involving pre-trial discovery or the calendar. Rule 1:6-2(f) requires the judge to indicate on the order whether her findings of fact and conclusions of law that explain her disposition of the motion were oral or written, and when they were rendered. As noted, the motion judge did neither when she denied defendant's motion to bar plaintiff's claim for medical expenses. See Raspantini v. Arocho, 364 N.J. Super. 528, 531–32 (App. Div. 2003) ("While a request for oral argument respecting a substantive motion may be denied, the reason for the denial of the request, in that circumstance, should itself be set forth on the record.") (citations omitted).

Nevertheless, we are convinced these errors were not "clearly capable of producing an unjust result," the standard governing our review for harmful error. R. 2:10-2. That is so because at trial defendant had the opportunity and did vigorously challenge the admissibility of evidence supporting plaintiff's claim for medical expenses under then-existing N.J.S.A. 39:6A-12.

We also reject defendant's contention that the DOBI fee schedule contained presumptively reasonable amounts for medical services, and plaintiff's claim was therefore limited to those amounts. When this case was tried, N.J.S.A. 39:6A-4.6(a) provided that DOBI shall "promulgate medical fee schedules on a regional basis for the reimbursement of health care providers providing services or equipment for medical expense benefits for which payment is to be made by an automobile insurer under [PIP] coverage . . . [or] by an insurer under medical expense benefits coverage[.] " (emphasis added); see also N.J.A.C. 11:3-29.1(b) (implementing the provisions of N.J.S.A. 39:6A-4.6 to establish fee schedules "for the reimbursement . . . to be made by automobile insurers under PIP coverage[.]"). The regulation makes clear that the fee schedules do not apply to "[o]ther coverages contained in an automobile . . . insurance policy[,]" or to "[a]ny other kind of insurance[.]" N.J.A.C. 11:3-29.1(d)(1) and (2). At the time of the trial in this case, and because the accident occurred prior to August 1, 2019, the DOBI fee schedules did not apply to claims for medical expenses in excess of those paid under plaintiff's PIP coverage.

Chapter 245 amended the statute for all accidents that occurred after August 1, 2019, and essentially adopted defendant's argument by making the DOBI fee schedule applicable to "payment of unreimbursed medical expenses

10

that are admissible as uncompensated economic loss pursuant to [N.J.S.A. 39:6A-12]." However, it is undisputed that Chapter 245 does not apply to this case.

We turn our attention then to defendant's substantive challenge to the award of economic damages to plaintiff. Pursuant to Chapter 244, plaintiff was entitled to recover from defendant "uncompensated economic loss . . . including all uncompensated medical expenses not covered by the [PIP] limits applicable to the injured party and sustained by the injured party." N.J.S.A. 39:6A-12. "All medical expenses that exceed, or are unpaid or [are] uncovered by any injured party's medical expense benefits [PIP] limits . . . are claimable . . . as against all liable parties . . . ." Ibid. (emphasis added).

It is axiomatic that "[u]nder the common law, a person injured by the negligent acts of another had an unqualified right to the recovery of medical expenses from the wrongdoer." Haines, 237 N.J. at 297 (J. Albin, dissenting) (citing Sotomayor v. Vasquez, 109 N.J. 258, 261 (1988)); Schroeder v. Perkel, 87 N.J. 53, 69–70 (1981); see also Model Jury Charges (Civil), 8.11A, "Damages Charges — General, Medical Expenses (Non-Auto)" (approved Dec. 1996) ("The amount of payment is the fair and reasonable value of such medical expenses."). We recognize the cases defendant cites in arguing the testimony of

plaintiff's treating doctors failed to supply an adequate foundation for the admission of plaintiff's medical bills into evidence. See, e.g., Sallo v. Sabatino, 146 N.J. Super. 416, 418 (App. Div. 1976) (affirming the trial court's refusal to admit the plaintiffs' hospital bills because they failed to properly show that "the treatment was necessary and the charges [were] reasonable"); Hackensack Hosp. v. Tiajoloff, 85 N.J. Super. 417, 419–20 (App. Div. 1964) (finding that when the reasonableness of medical bills is at issue, "the books of account alone usually cannot supply that proof").

However, here, all the testifying doctors were asked to examine the medical bills and state whether the treatments provided were necessary and the costs associated with those treatments reasonable. For example, Dr. Rijsinghani, the radiologist, identified a bill for five MRIs performed on plaintiff at a cost of $2000 each. He explained that the amount charged was based upon "the geographic area . . . and the type of services . . . rendered[,]" and that the charges were "customary fees in [his] industry." He further explained that he knew "many people in the industry" and "what the customary charges [we]re." Cross-examination only further solidified the doctor's conclusions based upon personal knowledge and experience.

Dr. Robinson, the chiropractor, identified a bill for $13,845 for his services. He explained that he based his billing rate upon prior experience working for other chiropractors, discussions he had with a "billing and consulting firm[,]" conversations with other chiropractors, and the Association of New Jersey Chiropractors. Dr. Robinson also explained that he billed plaintiff $57,959 for physical therapy performed in his office, and that he formulated the billing amounts for these services in the same manner. On cross-examination, Dr. Robinson acknowledged that a portion of his bill had been paid by plaintiff's PIP carrier, and that he accepted much less than the billed amount.

Dr. Fleischhacker examined bills from his office, the surgical center where he performed a discogram on plaintiff's spine, and the radiological center that performed a CAT scan after the surgery. The doctor was part owner of the surgical center, and described how its bills were formulated in consultation with "advisors[] and a billing company . . . that charges the usual and customary rates." He also explained in detail how he relied upon "health care accountants . . . associations and organizations[,]" as well as a company that "surveys doctors throughout different areas of the country" to identify his rates.

On cross-examination, Dr. Fleischhacker acknowledged that his bills would "get reduced" when submitted to insurance companies in amounts that

varied from company to company. He was not asked if any of the outstanding bills were unpaid, and, on re-direct, he testified that his practice would "bill the patient" for any unpaid balance "if the insurance . . . company [did not] pay the whole bill[.]"

Dr. Cohen, who performed spinal fusion revision surgery on plaintiff, identified a list of billings for his services, the hospital where the surgery was performed, and those of other providers associated with the surgery. The doctor testified he had been performing surgery in conjunction with these providers for eighteen years, and had personally arranged for some of them to assist in plaintiff's surgery. He acknowledged these bills were "reasonable and customary with respect to the procedures [he performs] on a regular basis." On cross-examination, Dr. Cohen stated that he did not "accept insurance[,]" but did not know if the hospital did.

Lastly, Dr. Garfinkel identified certain bills during his deposition, including the bills for the surgical centers, which he partially owned, where he performed the procedures on plaintiff's knees and shoulders, and the anesthesiologists involved. The doctor identified the charges as "reasonable and customary." On cross-examination, Dr. Garfinkel was asked "[w]hat methodology . . . [he] use[d] to establish that the unpaid medical bills were fair

14

and reasonable?"  The doctor cited his "many years" of experience, "certain publications . . . used . . . to evaluate appropriate billing both in-office, as well as at a surgical treatment," and discussions within his medical group.  The doctor acknowledged that patients were billed the same amounts, without regard to insurance, although he confirmed he was not always paid the billed amount by an insurance company.

Contrary to defendant's repeated assertions before trial, at trial, and before us at oral argument, whether medical charges reflect the fair and reasonable value of services rendered does not require the opinion of someone with expertise in billing practices or approved insurance rates of payment.  We have recognized that "health care providers and health agencies" themselves define what are the "usual, reasonable and customary" charges for medical services. Hahnemann Univ. Hosp. v. Dudnick, 292 N.J. Super. 11, 20 (App. Div. 1996). "One would presume that an amount charged would be reasonable if it is within a range customarily charged for such services within the community and the amount charged compares with the amount charged by such physician to other patients of his receiving similar treatment."  Ibid. (quoting Thermographic Diagnostics, Inc. v. Allstate Ins. Co., 219 N.J. Super. 208, 229 (Law Div. 1987)).

A-3119-17T4

Here, all the medical experts testified regarding their billings and the basis for the reasonableness of the charges. Defendant vigorously challenged the reasonableness of the bills, both by noting the doctors were frequently paid less by insurance companies and lacked personal knowledge of the billing procedures of associated providers. We acknowledge that some of the billings were not performed by the doctors who testified, and, therefore, even if admissible as business records excepted from the hearsay rule, see N.J.R.E. 803(c)(6), contained embedded hearsay. However, that issue is not before us.[3] In short, we conclude the medical providers were competent witnesses who did not provide "net opinions" regarding the reasonable costs of the medical treatment and procedures provided to plaintiff.

Lastly, we address NJDA's assertion that the trial judge permitted plaintiff to mischaracterize the identified bills as "unpaid," when in fact there may have been payments made to, and accepted by, those providers by plaintiff's PIP insurer or some other insurer. As we understand the contention, NJDA asserts

---

[3] At trial, defendant did assert the bills contained hearsay. However, before us, defendant argues only that the doctors provided "[n]et [o]pinions" as to the reasonableness of the bills, and "[e]ven assuming plaintiff . . . call[ed] . . . providers' office managers or accounting department employees . . . th[ose] individuals would lack personal knowledge of the foundational predicate . . . : the reasonable value of the underlying medical services."

the judge was required to mold the jury's award to credit any payments insurers made to plaintiff's medical providers, including PIP benefits paid by her automobile insurer. NJDA cites to "inconsistencies" in the billings contained in defendant's appendix, and entries on some bills that reflect receipt of payments from plaintiff's auto insurer and health insurer.

The record on appeal is quite confusing, and the trial transcripts do not clarify the evidence actually adduced before the jury. During her testimony, plaintiff was shown the bills attributed to the testifying doctors. In each instance, she testified or acknowledged those were the amounts she owed.[4] Some of the billings in the appendix, which includes the PIP payment ledger, do reflect receipt of insurance payments on plaintiff's behalf. The PIP payment ledger likewise reflects some payments to the testifying doctors or their associated entities.

N.J.S.A. 39:6A-12 is, at its core, "intended to prevent a double recovery of damages[,]" Haines, 237 N.J. at 296 (J. Albin, dissenting), as is the collateral source statute. See N.J.S.A. 2A:15-97.[5] However, defendant never disputed

---

[4] For example, in summation, plaintiff's counsel advised the jury that her claim was for $765,666 in unpaid medical expenses. However, in her testimony, plaintiff identified a number of billings totaling more than $900,000 as "unpaid."

[5] N.J.S.A. 2A:15-97 provides:

that plaintiff's PIP benefits were exhausted. Indeed, the trial testimony revealed that several of the testifying doctors did not treat plaintiff until after $50,000 in benefits were paid. More importantly, defendant never argued to the trial judge, including when he moved for a new trial, that he was entitled to a reduction of the jury's award of medical expenses. Nor has he made such an argument in his brief. See Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019) (noting an issue not briefed is waived).

It is well-settled that "[a]n amicus curiae may not interject new issues, but must accept the issues as framed and presented by the parties." James v. Arms Tech., Inc., 359 N.J. Super. 291, 324 (App. Div. 2003) (quoting Fed. Pac. Elec.

> In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of . . . [N.J.S.A.] 39:6A-1 et seq.[], if a plaintiff receives . . . benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.

Co. v. N.J. Dep't of Envtl. Prot., 334 N.J. Super. 323, 345 (App. Div. 2000)). Given the lack of clarity in the documentary record, upon which NJDA's argument is solely predicated, we refuse to remand the matter for further consideration of the issue now raised.

## II.

Lastly, we address defendant's claim that the judge committed reversible error by advising the jury defendant was insured. The issue arose in the following context.

As indicated, defense counsel cross-examined plaintiff's doctors as to whether they had received payments from an insurance carrier, and whether it was their practice to accept what was paid by a carrier even though it was less than the billed amount. Plaintiff's counsel objected, arguing the cross-examination implied that plaintiff was insured, but defendant was not. He asked the judge to issue a curative charge pursuant to our holding in Tomeo v. Northern Valley Swim Club, 201 N.J. Super. 416 (App. Div. 1985).

Defense counsel explained his cross-examination was intended only to demonstrate the doctors' bills were inflated and not the reasonable costs of medical services provided. The judge agreed with plaintiff, finding the cross-examination unnecessarily injected the issue of insurance into the case. He told

19

the jury that defendant was insured, but that the issue of insurance was not relevant to the jury's decision. The judge repeated the same instruction in his final charge before deliberations.

We review the trial court's decision to provide a curative instruction for an abuse of discretion. State v. Kueny, 411 N.J. Super. 392, 403 (App. Div. 2010). "Accordingly, the trial court's decision . . . should not be disturbed on appeal unless the decision was 'made without a rational explication, inexplicably departed from established practices, or rested on an impermissible basis.'" Estate of Kotsovska v. Liebman, 221 N.J. 568, 588 (2015) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

In Tomeo, defense counsel told the jury in summation that his client's swim club was a "family[-]owned organization[,]" described the family members affiliated with the corporation, and said the plaintiff wanted to take the defendant's "money[,]. . . possessions[,]. . . [and] house[.]" 201 N.J. Super. at 419. In granting a new trial, we said:

> When defense counsel creates <u>a false impression of no insurance</u>, ordinarily the trial judge should first give him the opportunity of correcting that impression so that he may explain, if it is the case, that he raised the inference inadvertently. Before the incident passes, however, the trial judge must be satisfied that <u>the jury is unequivocally advised, by counsel or by the court, that the defendant is insured but that they are to</u>

disregard that fact because it is not relevant to the issues they are to determine.

[Id. at 421 (emphasis added).]

Here, it was a mistaken exercise of the judge's discretion to have provided the instructions, because it is clear from the record that the cross-examination did not create a false impression that defendant was uninsured. Indeed, the judge never made such a finding, but rather decided to issue the curative charge because cross-examination raised the issue of insurance in a general sense. In short, while it was well within the judge's discretion to tell the jury the issue of insurance coverage was irrelevant, it was a mistaken exercise of that discretion to advise the jurors that defendant was insured.

Defendant contends the instructions were prejudicial and brought about an unjust result, because the jury asked during deliberations whether the billings reflected the outstanding balance due after insurance payments. However, the jury's question most likely arose because of defense counsel's cross-examination, not because of the curative charge. Most importantly, the judge told the jury more than once, including in response to its question, that consideration of insurance was irrelevant to its deliberations. We assume the jury understood and followed these instructions. See, e.g., State v. Herbert, 457

N.J. Super. 490, 503 (App. Div. 2019) ("The authority is abundant that courts presume juries follow instructions.").  There was no reversible error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION